DISSENT: Garfield, Bliss, and Oliver, JJ.
On January 18, 1939, Mrs. Mary E. Johnston, who was then seventy-five years of age and confined in bed at Mercy Hospital, Dubuque, Iowa, filed her petition in the district court of Dubuque county, asking the appointment of George W. Hird as guardian of her property. George W. Hird had been duly admitted to the practice of law in Iowa, and at that time was about twenty-seven years of age. He was associated and officed with Mrs. Johnston's attorney, and it was her attorney who prepared the application for the appointment of Mr. Hird as guardian. On January 18, 1939, George W. Hird was appointed as guardian, and his bond fixed at $3,000, which he filed, and on the same day letter of guardianship issued to him.
At that time Mr. Hird was administrator of the Patrick Walsh estate and there was a shortage of about $1,500 in that estate. He was also administrator of the Jennie O. Nichols estate and there was a shortage in that estate of about $300. Of course Mr. Hird did not inform the court of these shortages at the time he was appointed as guardian and qualified.
On January 25, 1939, Mr. Hird filed an application for the *Page 893 
increase of his bond as guardian, setting out that he had discovered more personal property belonging to his ward, and the bond was increased to $32,000, and on the same day he filed a new bond with the Continental Casualty Company as surety, in the amount of $32,000.
On January 19, 1939, Mrs. Johnston had her will prepared for her by her attorney, Mr. Bowen. It was dictated to Mr. Hird, who was also a stenographer, and duly executed. The will appointed George W. Hird as executor without bond.
On February 5, 1939, Mrs. Johnston died. February 10, 1939, her will was duly probated, George W. Hird confirmed as executor. He qualified and letters testamentary issued to him.
On February 8, 1939, after the death of Mrs. Johnston, Hird found under a mattress in her room at the Mercy Hospital the sum of $744.59 in cash.
On February 13, 1939, he filed his inventory as guardian of Mary E. Johnston, and also his inventory as executor of Mary E. Johnston Estate, listing the identical property in each inventory and including therein the $744.59 of cash. As guardian he disbursed or paid out no money. Everything he received as guardian remained intact, until he became executor. Between March 29, 1939, and April 24, 1940, Hird admitted that he took and used funds belonging to the Estate of Mary E. Johnston, in the sum of $8,844.49. He acted as executor until June 3, 1940, when an order removing him as executor of the Mary E. Johnston Estate was entered and George F. Jansen was appointed as administrator c.t.a. of the will of Mary E. Johnston.
Mr. Hird filed his final report as guardian on September 7, 1940, to which the legatees and administrator c.t.a. filed objections. The objections alleged among other grounds that Mr. Hird as guardian had been guilty of fraud and bad faith in his conduct in relation to his ward's estate. That he as guardian had entered into a tortious scheme and plan for the conversion of the money and property of his ward to his own use. Later in this opinion the objection will be set out more in detail. The guardian's surety filed a motion to strike from the objections all of the allegations of fraud and bad faith. The court sustained the motion to strike and the objectors elected to stand *Page 894 
on said ruling and declined to proceed further. The surety on the guardian's bond filed an application for discharge and petition of intervention, also asking to be discharged.
Although the objectors announced in open court, that they would offer no testimony the court on its own motion proceeded to hear evidence in regard to the manner in which the guardian was appointed and as to his doings during his term of office. The complete field was covered over the objections of the guardian's surety. George W. Hird told the entire story of the manner in which he was appointed and how he handled the guardianship and the estate of Mary E. Johnston. So we find that although the court sustained the motion striking the objections to the report, on the court's own motion all of the evidence covering the bad faith of George Hird was admitted. The court entered an order finding the Guardian George W. Hird and his surety were liable for $8,934.59 and directed that suit be brought to recover said sum.
The basis for the order is as follows, we quote:
"That the said George W. Hird, Guardian aforesaid, in failing to report the condition of his ward's estate, before undertaking to administer upon the Estate of Mary E. Johnston, Deceased, as Executor, under his appointment without bond, being a trust officer of the District Court of Dubuque County, Iowa, was charged with the duty of exercising the affairs of his office with the utmost good faith, and of preserving the trust property coming into his possession as Guardian intact, and of administering his said ward's estate under the orders and directions of the District Court of Dubuque County, Iowa, and that in failing to report the condition of his said ward's estate before attempting to administer upon the Estate of Mary E. Johnston, Deceased, as Executor without bond, and in failing to report the death of his said ward in an appropriate report as Guardian, and in failing to inform the Court that he was under a $32,000.00 surety bond as Guardian before undertaking to administer upon the Estate of Mary E. Johnston, Deceased, as Executor without bond, and in failing to obtain directions and orders from said District Court as to how to proceed in the premises, the said George W. Hird, as said Guardian, failed to faithfully discharge his duties, and violated his obligation *Page 895 
taken for the faithful performance of the duties imposed by law upon his office as said Guardian, and is, therefore, responsible to the Estate of Mary E. Johnston, Deceased, for the loss caused by his said wrongdoing as such Guardian.
"That it was the duty of the said George W. Hird, as said Guardian, to give his personal care to the management of his said ward's estate, and he was bound under the law to exercise such diligence and prudence as a reasonably prudent person ordinarily employs in the conduct of his affairs; and the said George W. Hird, as a trust officer of this Court, in taking charge of the funds of the Estate of Mary E. Johnston, Deceased, as Executor, without first reporting to the Court the condition of the Estate of Mary E. Johnston, Incompetent, failed in his duty, and committed a fraud upon the Court, and thereby violated his obligation as said Guardian, and he and his surety are liable for his said wrongdoing and the loss incurred thereby."
The Continental Casualty Company has appealed and will be referred to as the appellant. The objectors have filed a cross-appeal from the ruling of the court sustaining the motion to strike. They will be referred to as the appellees and cross-appellants.
The appellees in their brief and argument make the following statement. We quote:
"This proceeding is somewhat out of the ordinary because the fraud that is charged is that through which Mr. Hird secured his appointment without bond and his breach of trust in subsequently permitting the transfer of the property to himself as executor, when he knew the property would be unsafe in his hands without bond."
[1] The facts in this case are not in conflict. As guardian George W. Hird did not take any of the money belonging to his ward. He turned over to the executor of the Estate of Mary E. Johnston, all property which came into his hands as guardian. It was during the time that he was acting as executor that the defalcations occurred. He acted as guardian for only 18 days. All of the funds and property came into the hands of the executor intact. The account in the bank out of which he stole the *Page 896 
money was in his name as executor and the checks he gave were signed by him as executor.
In the case of Taylor v. McArthur, 87 Iowa 155, 158,54 N.W. 228, 229, this court said, we quote:
"The objections made by the plaintiff were directed to payments which the report claimed had been made to her, amounting to one thousand, one hundred and ten dollars, and which she denied having received. But the first of those payments was dated December 12, 1887, when Jenkins was acting as executor. Therefore the sureties on his bond would not be responsible for any of them.
"It is insisted by the appellant, with much earnestness, that, although Jenkins' authority as special administrator ceased when he was appointed executor, yet his liability as special administrator remains, and will remain until he has made a proper accounting. It is undoubtedly true that he should have made a report of his proceedings as special administrator, accounting fully for the property which had come into his hands as administrator; but, if he did in fact make a proper disposition of such property, he and the sureties on his bond are not liable for his failure to make a formal report showing such disposition. It having been shown that he received certain property as special administrator, the burden is on him to account for it. The proper method of doing that was by an official report, duly approved by the court, but in the absence of that the fact may be shown by any competent evidence; the burden of proof as to that issue being upon defendants. The report of October 15, 1889, and certain vouchers which accompanied it, including bank checks, tended to show that the property in question was in the possession of Jenkins when he was appointed executor, and that the deficit in his accounts, if one exists, occurred through misappropriation of funds made after that time. If that was the case, the sureties on his bond as special administrator would not be liable for the deficit."
The claim actually made is, that the guardian was obliged to see that Hird was not permitted to act as executor and that by failing to prevent Hird from acting as executor, the surety on the guardian's bond became liable. *Page 897 
It must be kept in mind that this record shows without any dispute, that Hird as executor received all the funds and property of the decedent and that all losses which are the subject of controversy were due to the misappropriation of Hird as executor of funds of the estate which he had received, inventoried and was held to account as executor.
In the recent case of Faith v. National Casualty Co., 230 Iowa 173,179, 297 N.W. 287, 290, this court said:
"Before a surety on the guardian's bond can be held liable there must be a showing that the guardian has not properly accounted for the funds and that there has been a loss to the guardianship. This conclusion is supported by our holding in the case of Baitinger v. Elmore, 208 Iowa 1342, 1345, 227 N.W. 344,346, where we said: `* * * In order to recover, not only must the duty of the guardian and the breach be shown, but resulting loss must appear. * * *'"
No loss having been shown to have occurred while Hird was acting as guardian, the lower court was in error in entering judgment against the guardian's bondsman, and the motion to discharge the bonding company should have been sustained.
[2] We turn now to the cross-appeal of the appellees and cross-appellants. In a single division cross-appellants discuss the ruling of the court in striking from their objections to the guardian's report certain paragraphs. It is hard to see how there were any prejudices to the objectors by the court sustaining the motion to strike parts of the objections for the court after so doing permitted testimony to be introduced, and to say the least the field covered by the testimony was very broad.
We quote from cross-appellant's argument:
"Ground 16 was a motion to strike paragraph 8 of Division II of said objections for the same reasons and for the further reason that the duly qualified and acting executor of the estate of Mary E. Johnston, deceased, became vested with the title to the personal property belonging to her estate and entitled to possession thereof, and the guardian had no right or power to interfere with the exercise by said executor of the powers vested in him by virtue of his appointment and letters, and said paragraph pleads unfounded and unsupported opinions and *Page 898 
conclusions. Paragraph 8 of said Division II, so stricken, is as follows:
"`8. That pursuant to the entire tortious scheme and plan of said Guardian the funds of the guardianship were withdrawn from their depository by checks issued by the said George W. Hird under his self-styled designation as executor and such withdrawals and all of them were with the consent and connivance of the guardian and pursuant to his plan to allow such withdrawal and thus to convert the guardianship funds to the personal use of said guardian. That no accounting was made by guardian herein except the inventory filed on February 13, 1939; that no order of court was entered herein directing guardian to pay over funds of this guardianship to any successor fiduciary; that such guardian did not act in good faith in allowing such withdrawal of funds by himself thus self-designated as executor of the estate of the ward; that said guardian was grossly negligent in permitting and suffering dominion over the money and property of his said ward by anyone including himself acting in any capacity other than as Guardian herein; that said guardian planned and effected said wrongful conversion of guardianship funds to his own use pursuant to a tortious scheme and machination playing on his dual capacity as Guardian and as Executor of the Estate of his deceased ward.'
"Ground 17 was a motion to strike paragraph 9 of Division II of the objections for the same reasons and for the further reason that it could not and would not constitute any negligence on the part of the guardian to permit the duly qualified and acting executor of the estate of the decedent to have and take possession of the property which, under the law, the executor was authorized to take, and, which, under the law, it was his duty to take. Paragraph 9 of said Division II, so stricken, is as follows:
"`9. That there was no transfer of the funds of the guardianship from the depository under order of this court or otherwise and all withdrawals therefrom were in pursuance of a tortious scheme and plan of the guardian to convert his ward's funds to his own personal use, and that said guardian negligently allowed the funds of the guardianship to become depleted *Page 899 
and to be converted to his own use under the self-designation as executor when as a reasonable and prudent man he knew that said funds were insecure in his hands as executor without bond, he then being insolvent and in default in other fiduciary relationships, and the entire proceeding was through wilful design, misfeasance, the commission of a wrongful scheme, and the omission, failure and neglect to administer properly the affairs of the guardianship.'
"The objectors elected to stand on such ruling and declined to proceed further.
"The error consists in the court's striking from the objections to the final report all allegations charging Mr. Hird, an attorney-at-law, the guardian, with personal intention to defraud and overt acts actively participated in by him as guardian."
The allegations which were stricken from the objections are attempts to plead breaches of duty on the part of the guardian where no such duty existed.
Hird as an individual had certain obligations and duties. As an attorney-at-law, as an officer of the court, he also had certain obligations and duties. That he failed to perform his duties and obligations as an individual and a member of the bar, is conceded, but what we are solely concerned with here, are his duties as a guardian and nothing else. In that capacity he had no duties to perform with respect to either preparing decedent's will or in relation to the probate thereof. As guardian he had nothing to do with the settlement of decedent's estate. Therefore as guardian he could not and did not breach any such duties. All misappropriations were made while he was acting as executor. The allegation stricken related to matters which neither tended to show a breach in the duties of the guardian nor any loss occurring during the period of the guardianship. The lower court was right in sustaining the motion to strike parts of the objections. — Affirmed on cross-appeal; reversed on appellant's appeal.
MILLER, C.J., and SAGER, WENNERSTRUM, HALE, and STIGER, JJ., concur.
 GARFIELD, BLISS, and OLIVER, JJ., dissent. *Page 900