Hillsborough,
No. 5004.

AMERICAN FIDELITY COMPANY, *Ap't*

*v.*

CHARLES H. BARNARD, Trustee *& a., Ap'ees.*

AMERICAN FIDELITY COMPANY, *Ap't*

*v.*

CHARLES H. BARNARD, Executor *& a., Ap'ees.*

HARTFORD ACCIDENT & INDEMNITY COMPANY, *Ap't*

*v.*

CHARLES H. BARNARD, Conservator, *Ap'ee.*

Argued March 6, 1962.

Decided June 5, 1962.

148

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *Dort S. Bigg, Jr.* (*Mr. Bigg* orally), for the American Fidelity Company.

*Devine, Millimet & McDonough* (*Mr. Murray Devine* orally), for the Hartford Accident & Indemnity Company.

*Booth, Wadleigh, Langdell, Starr & Peters* (*Mr. Theodore Wadleigh* orally), for Winthrop Wadleigh, succeeding trustee of the estate of Frank E. Heald and administrator d.b.n., w.w.a.

WHEELER, J. Charles H. Barnard was appointed conservator of Frank E. Heald by the Hillsborough county probate court on September 30, 1948. He gave bond with the Hartford Accident & Indemnity Company as surety in the penal sum of fifty thousand dollars. No inventory of this estate was ever filed and no account as conservator was filed until October 1, 1956, which was never allowed in the probate court.

Heald died testate July 9, 1951, and Barnard was appointed executor on July 13, 1951, and gave bond with the American Fidelity Company as surety in the penal sum of one hundred thousand dollars. An inventory of this estate was filed on November 5, 1951, showing assets of $284,092.31. No account was filed by the executor until October 1, 1956, which was disallowed by the probate court.

Barnard was appointed trustee under the will of the late Frank E. Heald on August 19, 1952, and gave bond with the American

Fidelity Company as surety in the penal sum of one hundred thousand dollars. A trust inventory was filed July 30, 1953, showing real estate only. This was not accepted by the probate court because not filed within the statutory period. No account was filed by Barnard as trustee until October 1, 1956, which was disallowed. In January 1957, the judge of probate for Hillsborough county, with the consent of all parties, appointed a certified public accountant to conduct an audit of the accounts and records of Barnard as conservator, executor and trustee. As a result of this audit, a deficit was found in the amount of $225,359.78. Based on the manner in which Barnard handled his accounts, the accountant allocated this deficit to Barnard in his respective capacities as follows: conservator $12,087.41; executor $208,722.68; trustee $4,549.77. Thereafter on April 16, 1957, Barnard was removed as executor and trustee by the probate court and Winthrop Wadleigh was appointed administrator d.b.n., w.w.a. and trustee under the will of said Frank E. Heald and qualified in both capacities.

On April 14, 1960, the American Fidelity Company paid to Winthrop Wadleigh in his aforesaid capacities the sum of one hundred thousand dollars, being the full principal of its executor's bond, with the express stipulation that it was made without prejudice and not to be considered as an admission of liability.

The Court below found that the failure of the conservator to file an inventory or an accounting until October 1, 1956, was a breach of the bond which enabled Barnard to fraudulently take control of the assets of the estate and divert them to his own use. It is contended that Hartford bonded Barnard as conservator only during the life of his ward and he had no further authority to act as such thereafter; that Barnard's action in transferring the assets of the conservator to himself as executor and receipting for the same terminated the liability of the bond and operated to transfer any future liability to the sureties of his bond as executor.

In allocating the liability of the sureties of Barnard in his tripartite capacity as conservator, executor and trustee, it is necessary to examine his conduct in the light of established law governing those who act in a fiduciary capacity. A conservator shall "be subject to all provisions of law now in force as to guardians, so far as they apply to estates of their wards" and as such is required to give bond to the judge of probate in a reasonable sum with sufficient sureties upon condition that, among other things, he return an inventory and "render, upon oath, a true and just

account of his guardianship, when thereto required, and . . . faithfully discharge his trust." RSA 464:18; 462:3; *Yeaton* v. *Skillings*, 103 N. H. 352, 355. As has been noted, Barnard was appointed conservator September 30, 1948. His ward died July 9, 1951. No inventory was ever filed and no account of his conservatorship was filed until October 1, 1956, which was disallowed by the judge of probate.

Barnard continued to pay the premiums on his conservator's bond for some four to five years after his ward's death and while he was at the same time paying the premiums on his executor's and trustee's bonds. He never informed the bonding company of the death of his ward, and when the company learned of this fact, certain reimbursements for premiums were made.

He qualified as executor on July 13, 1951, and filed no inventory of estate until November 5, 1951, contrary to the provisions of the statute. RSA 554:1. No account as executor was filed until October 1, 1956, contrary to the provisions of RSA 554:26, which provides that every executor shall file in probate court an annual account unless excused by the judge of probate, but in no event shall he be excused for a longer period than three years. In his capacity as trustee, Barnard gave bond with sufficient surety, conditioned upon performing the following duties: That he would file a "true inventory"; that he would annually account to the judge of probate for the income and profits of the estate; and that at the expiration of the trust he would settle and adjust his account and pay over all moneys and property with which he has been entrusted and he would "faithfully execute the trust according to the true intent of the devisor." RSA 564:1. An inventory of the trust was not filed until July 30, 1953. No account was filed until October 1, 1956. In all respects, whether as conservator, executor or trustee, Barnard failed to comply with the statutory requirements.

Auditor Drayton faced a complicated task in attempting to reconstruct Barnard's accounts and allocate the defalcations to the proper estate. He testified that Barnard's books and records were kept in a very "haphazard manner." He contacted Barnard many times seeking information that had not been furnished and finally went to his office and took what records he felt were necessary. He further testified: "I feel I have never in my life examined such a sloppy mess of records, and I feel in examining his records and reconciling his accounts, I feel Mr. Barnard made deposits in

accounts that were needed for the benefit of making his expenditures. He had no system whereby he kept one account in control as against the other. The estate and trust accounts were mixed. The attorney account was used for the benefit of both. The attorney account also had other estates included, and I feel that Mr. Barnard disbursed the receipts from the various sources as he needed to. I further had the feeling that the shortage in these accounts were used for covering of other accounts through his attorney account."

Auditor Drayton broke down the defalcations by periods, beginning in July 13, 1951, when Barnard qualified as executor, in the following amounts: July 13, 1951 to August 19, 1952, when Barnard qualified as trustee, the sum of $55,085.00; August 19, 1952 to December 31, 1952, $27,974.07; January 1, 1953 to March 31, 1953, $4,465.05; April 1, 1953 to June 30, 1953, $40,597.00; October 1, 1953 to December 1, 1953, $10,058.49; July 1, 1954 to December 31, 1956, $77,836.87. For the period of July 1, 1953 to September 30, 1953, a credit of $4,822.62 was allowed, together with an unallocated credit of $3,628.88. From the time that Barnard qualified as trustee on August 19, 1952, the defalcations amounted to the total sum of $152,479.98; and between August 19, 1952 and December 31, 1952 they amounted to $27,974.07.

It is contended by Hartford Accident & Indemnity Company (hereinafter called Hartford) that as Barnard's surety as conservator it cannot be held for his actions as executor or trustee. In support of this argument, Hartford points out that the audit of the conservatorship showed personal estate of the ward at the outset of $274,037.33 and that the Court found that during the conservatorship there were no sales of any assets of the ward and that such sales were carried out by Barnard acting in the subsequent capacity of either executor or trustee. It is further pointed out that the final audit of the conservatorship showed a deficit of only $12,087.41, which gave no credit for compensation and expense of Barnard during the thirty-three months he served as such.

Pursuant to requests of Hartford the Trial Court made the following findings: "Charles H. Barnard, during the period of his conservatorship, held numerous bank accounts in three (3) Manchester Banks for the benefit of his ward, and the evidence shows that all of the accounts were either transferred to Barnard as Executor after the death of Frank E. Heald, as shown on the bank books themselves, or were inventoried and receipted for by

Barnard as Executor, shortly after Mr. Heald's death. The evidence is undisputed that from and after the death of Frank Heald, Barnard never purported to deal with any of these accounts in his capacity as Conservator. All of the evidence is to the effect that upon the death of his ward, Charles H. Barnard, as Conservator, effected both a physical and technical transfer of all of the assets in the estate to himself as Executor . . . and, further, that Barnard never thereafter purported to act in his capacity as Conservator." In view of these findings Hartford could not properly be held liable for defalcations from the estate beyond the amount of $12,087.41, which the accountant found to be the deficit of the conservatorship. *In re Johnston*, 230 Iowa 891; *McManus* v. *Sears*, (Iowa) 109 N. W. 2d 630. See also, Annot. 111 A. L. R. 267, 273.

There is no dispute as to the liability of American Fidelity Company as surety on the executor's bond except as to interest. Appellant American Fidelity Company contends generally that the trustee's bond is chargeable only to the extent of losses from those assets which Barnard held as trustee.

As has been noted, Barnard violated the condition of his bond as executor, and subsequently as trustee by misappropriating the assets and by failing to conform to the statutory requirements in filing an inventory and an account. By thus being enabled to serve in his dual capacity as conservator, executor and as trustee, an opportunity was afforded to violate the statutory requirements for such capacities and thus successfully conceal his defalcations from these estates. While it is true that the auditor allocated specific sums which were embezzled by Barnard to the several estates, it is difficult from the record to find where the embezzlement of one estate ended and the other began.

If two individuals had been serving in the respective capacities as did Barnard, the individual trustee would have been charged with the duty to see that his predecessor executor complied with the statutes in administering the estate and to expeditiously secure possession of the particular estate to which he was entitled, and thus prevent any defalcations or losses.

It was Barnard's duty as trustee to secure control of the trust estate as soon as the executor should have filed his final account in conformity with the statutory requirements. The obligation of a trustee has been succinctly stated in the following language: "The trustee is under a duty to take such steps as are reasonable to secure control of.the trust property and to keep control of it. Thus

in the case of a testamentary trust where one person is named as executor and another as trustee, it is the duty of the trustee to obtain possession of the trust property from the executor, and if he does not within a reasonable time take such steps as are reasonable to obtain possession of the property and the executor thereafter makes away with the property, the trustee is liable to the beneficiaries for the loss." 2 Scott on Trusts (2d *ed.*) *ss.* 175, 177. See also, Restatement, Trusts, *ss.* 175, 177; *Tuttle* v. *Robinson,* 33 N. H. 104, 120; *Butler* v. *Legro,* 62 N. H. 350, 352; *Heaton* v. *Bartlett,* 87 N. H. 357; *McInnes* v. *Goldthwaite,* 94 N. H. 331.

It was the duty of Barnard as trustee to demand from Barnard as executor the amount due the trust estate, and where the trustee has failed to receive the sum due and the executor has likewise failed to account for the sum due the trust estate, it is no answer on the part of the surety in an attempt to escape liability to say that the default occurred in Barnard's capacity as executor. 111 A. L. R. 267, 294.

The Court found that while acting as trustee Barnard "wrongfully and fraudulently" diverted from the trust estate for his own use not less than $4,549.77 of trust assets as shown by the auditor's report, the sum of $5,250 representing the proceeds for the sale of the Lancaster property and the further sum of $20,207.89 representing the rental income from the Salter property, making a total of $30,007.66.

The Court also found that Barnard, as trustee, was chargeable with and accountable for the loss which resulted after his appointment as trustee, by diversion of funds to his own use in his capacities of executor and trustee, amounting to $152,479.98. While as we have indicated, he was chargeable as trustee with misappropriations made by him as executor which were made possible by his failure as trustee to obtain control of the assets, he could not reasonably have required a transfer of the assets on the date of his appointment as trustee. State and federal estate taxes were then unpaid, and by statute the state inheritance taxes were not due and payable until fifteen months from July 9, 1951. RSA 86:54.

It was found that after January 1, 1953, amounts totaling $124,505.91 were misappropriated. This was the latest date by which it could reasonably be found that Barnard as trustee should have obtained control of the assets, and thus prevented further defalcations. Under principles previously set forth, he became chargeable as trustee for the embezzlement of $124,505.91 after January 1, 1953.

As surety for the executor, American has paid $100,000 to the administrator and successor trustee. This repays the amount of $83,059.07 which Barnard as executor misappropriated, between July 13, 1951 and January 1, 1953. After payment by Hartford of $12,087.41 due on the conservatorship account, there will remain a balance of $16,940.93 of $100,000 paid by American to be credited against the joint liability of the executor and trustee for the period after January 1, 1953. Since the liability of the trustee exceeds $116,940.93, American as surety for the trustee is liable for the principal amount of the trustee's bond.

The decree of the Superior Court on the appeals from the probate court should be modified consistently with this opinion, to provide that Hartford was liable in the principal sum of $12,087.41, and American in the sum of $200,000. Both were liable for interest in addition thereto, and the expenses of the accountant. See *Century Indemnity Co.* v. *Casualty Co.*, 89 N. H. 121; *Miller* v. *Pender*, 93 N. H. 1. The Trial Court has found that the latter expenses should be allocated $855 to the conservatorship (Hartford) and $2,127.50 each to the executorship and trusteeship (American). These findings are sustained.

As previously stated, American is liable for interest in addition to the penal amount of its bond for the executor, and the first question transferred without ruling is answered in the affirmative. Such interest should run from August 19, 1959, the date of the probate court decrees. *Judge of Probate* v. *Heydock*, 8 N. H. 491; *Wyman* v. *Robinson*, 73 Me. 384. From and after that date, American is liable for interest in its dual capacity as surety for the executor and the trustee, and the second question transferred is so answered. In answer to question three it is our opinion that in the circumstances of this case interest should be compounded annually.

It is contended that during the trial it was error for the Superior Court to disregard the various probate accounts which Barnard filed which were the subject of this appeal.

The Court granted appellee Wadleigh's request number 1, which excluded the account filed by Barnard as conservator, the amended account filed as conservator, the executor's account and the trustee's account, as well as an affidavit by Barnard.

During the trial when these records were offered, counsel for Wadleigh said he would have no objections to showing that Barnard filed such accounts but that if they were offered as proof of the

facts stated therein, he would object. The Court ordered them marked and, in response to a request for a ruling that they could not be considered for their probative value, the Court replied that it did not propose to rule until they had been examined and that counsel could file specific requests for rulings on this point.

Later, at a hearing to set aside the verdict, the Court entertained some doubts as to the correctness of this ruling. It seems clear that when the records were introduced it was intended that they should not be considered for their probative value but only that such accounts were filed by Barnard. The Drayton audit established that there were defalcations in all three accounts, the total amount of which is accepted by all parties. Moreover, all accounts were disallowed by the probate court. In its findings, the Court took notice of the fact that these accounts had been filed and had been disallowed by the probate court.

If Barnard's accounts had been admitted without limitation, it is not clear how they could have been used as a basis to reconstruct the true picture in the absence of the Drayton audit. The auditor used the inventory of the estate as a starting point in establishing the various defalcations. In granting Wadleigh's request to reject the accounts, we find no error.

It is suggested by appellant Hartford that no credit has been given Barnard for his services as conservator. In this connection the Court found that his services as conservator, executor and trustee were of no value, and ruled that an embezzler may not be compensated for his services during the period of his embezzlement. We think this is a correct statement of the law. *McInnes* v. *Goldthwaite*, 94 N. H. 331, 338; *Stevens* v. *Stevens*, 97 N. H. 135.

*Remanded.*

All concurred.

On Rehearing. After the foregoing opinion was filed Hartford Accident & Indemnity Company moved that its liability for interest be limited to the period commencing August 19, 1959, the date of the probate court's decree. This is a matter not previously argued by counsel or considered in the opinion.

*Devine, Millimet & McDonough (Mr. Murray Devine* orally), for Hartford Accident & Indemnity Company, for the motion.

*Booth, Wadleigh, Langdell, Starr & Peters* (*Mr. Theodore Wadleigh* orally), for Winthrop Wadleigh, succeeding trustee, and administrator d.b.n., w.w.a., opposed.

WHEELER, J. The administrator contends that the surety for the conservator should be liable for interest from the dates when assets of the ward's estate were wrongfully appropriated to the conservator's own use. *Knowlton* v. *Bradley*, 17 N. H. 458; *Society* v. *Pelham*, 58 N. H. 566. Hartford contends that the shortages were due to "advances" reasonably made by the conservator to himself for compensation expectably due, and that no liability should attach for interest before the date of the probate decree. *Wendell* v. *French*, 19 N. H. 205; See *Chagnon* v. *Insurance Co.*, 96 N. H. 256, 260.

We are of the opinion that the contention of the administrator is essentially correct. *Miller* v. *Pender*, 93 N. H. 1; *Yeaton* v. *Skillings*, 103 N. H. 352. However, the dates of appropriation by the conservator during the thirty-three-month period of the conservatorship cannot be fixed with any degree of certainty. Accordingly, the surety's liability for interest in this case should be determined for the period commencing July 9, 1951, the date of death of the ward, by which date the total principal amount of the shortage had occurred. Consistently with the original opinion, the interest payable by Hartford should be compounded annually.

*Former result affirmed.*

All concurred.

June 29, 1962.