CRAIG M. BULLIS, Plaintiff-Appellant, *v.* DUPAGE TRUST COMPANY *et al.,* Defendants-Appellees.

Second District   No. 78-236

Opinion filed June 14, 1979.

Robert H. Snow, Ltd., of Chicago, for appellant.

Hartman E. Stime, of Peregrine, Stime & Newman, of Wheaton, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Craig M. Bullis, the son of Roselyn Ann Bullis, deceased, sued for a construction of the trust provisions under the decedent's will and for an accounting from the DuPage Trust Company, the trustee. The trial court dismissed plaintiff's complaint and he appeals.

The dispute involves the interpretation of Article Four of the will which provides:

"ARTICLE FOUR

All the rest of my estate, real and personal, wherever located (referred to in this article as the 'trust property'), including all lapsed legacies and devises, but expressly excluding any property over which I now or hereafter may have power or [*sic*] appointment, I give and devise to the Du PAGE TRUST COMPANY of Glen Ellyn, Illinois (a Banking Corporation with Trust Powers), as trustee, subject to the following trusts:

4. 1. Commencing at my death and during the life of my husband, MAURICE OTTO BULLIS, the trustee shall pay to him the income from the trust property, and in addition to income the trustee may pay from time to time to my husband such amounts from the principal of the trust property as the trustee considers necessary or desirable for his comfortable maintenance, medical care and welfare, taking into consideration the income and cash resources known to the trustee to be available to my husband from other sources, including the trust created by Article Three.

4. 2. Upon the death of my husband, MAURICE OTTO BULLIS, or upon my death, if he predeceases me, the Trustee shall set TRUST "B", as then constituted, aside for the benefit of our son, CRAIG MARSHALL BULLIS, as follows:

a. While CRAIG is under 25 years of age, the Trustee shall use for CRAIG'S benefit, so much of the income

of the Trust, as the Trustee determines to be required, in addition to his other income from all sources known to the Trustee, for his reasonable support, comfort and education, adding any excess income to the principal at the discretion of the Trustee. After CRAIG reaches that age, the Trustee shall pay all the current net income of his Trust to CRAIG in convenient installments, at least as often as quarter-annually.

b. Our son, CRAIG, is to receive twenty-five percent (25%) of my residuary Estate upon his twenty-fifth (25th) birthday, another twenty-five percent (25%) of my residuary Estate upon his thirtieth (30th) birthday, and the balance of the Estate on his thirty-fifth (35th) birthday.

c. If my son, CRAIG, should die before reaching his majority (21st birthday) and my husband, MAURICE, should predecease me, I direct that that share of the residuary Estate provided for herein for MAURICE and CRAIG shall be divided, share and share alike, between my sister, CLAUDIA WATERS, and my brother, WARREN A. RUXTON, or their heirs.

d. If my husband, MAURICE, should predecease me and my son, CRAIG, should die after reaching his twenty-first (21st) birthday and having been married and having had children born of the marriage, I direct that my Trustee give my residuary Estate to CRAIG'S children in portions and shares, such as will take care of their education, maintenance, and support during their lifetime, until each child has reached his twenty-first (21st) birthday, on which date each child will be given his proportionate share of the residuary Estate." (Emphasis added.)

Only the quoted portion of the will was offered in evidence and the entire will is not before us. The parties here have conceded that it is in the "usual" form setting up two marital trusts (Trust A and Trust B). The construction turns principally on the meaning of the underlined section 4.2.b.

In count I of his complaint Craig Bullis, then age 31, set forth the provisions of Article Four and claimed they were ambiguous. He further argued that in order to resolve the ambiguity it was necessary to receive extrinsic evidence bearing on the question of his mother's intention at the time she made her will. He also prayed for an interpretation of Article Four

that would accelerate the transfer of the principal of the trust from the trustee to himself: on reaching his 25th birthday, 25 percent of the principal, 50 percent upon reaching the age of 30; and the entire principal of the trust when he reached the age of 35, even if his father continued to live and be completely dependent upon the income of the trust. In effect, Craig Bullis took the position that his father was not a life beneficiary but rather a beneficiary for years.

In count II of the complaint Craig Bullis sought an accounting from the trustee.

The trust company filed a motion to strike and dismiss alleging that the complaint did not state a cause of action for construction and that no accounting was due to the plaintiff as a remainderman; and in addition that the accounting sought, in fact, involved it in its capacity as executor and not as trustee. The trial judge granted the motion to dismiss both counts which resulted in this appeal.

We conclude that the trial court did not err in dismissing count I and refusing thereby to construe Article Four of the will.

■■ Courts will refuse to construe a will which is neither ambiguous nor uncertain based merely on an allegation that construction is required when the record shows otherwise. (*Peck v. Drennan* (1951), 411 Ill. 31, 36. See also *In re Estate of Blansett* (1975), 28 Ill. App. 3d 552, 554.) It is also well established that in construing a will the intention of the testator controls, which if it can be determined from the words used will be carried into effect unless contrary to public policy or a fixed rule of law. (*Rosenthal v. First National Bank* (1968), 40 Ill. 2d 266, 276.) Further, "[t]he intention of the testator is to be ascertained by examining the entire will and by giving to the words employed their plain and ordinary meanings." (*Feder v. Luster* (1973), 54 Ill. 2d 6, 11.) Although, because of the record made by the plaintiff, we do not have the entire will to construe, it is possible to construe the intent of the testator from the plain language used in Article Four.

The introductory portion of the article provides for the transfer of the residue after what has been conceded as a prior Trust A has been funded. Subparagraph 4.1 clearly states that the trustee is to turn over the income generated by Trust B to Maurice Otto Bullis, Mrs. Bullis' husband, "commencing at my death and during the life of my husband," thereby clearly making Maurice Otto Bullis a life beneficiary.

Section 4.2 begins with the words "Upon the death of my husband, Maurice Otto Bullis, or upon my death, if he predeceases me * * *." This clearly indicates that the four modes of disposing of the principal of the trust set forth in section 4.2, subsections, a, b, c and d, are to come into play only upon the death of Maurice Bullis or upon the death of the testator if Maurice Bullis had predeceased her.

■■ It is true that section 4.2.b (when read independently of the rest of

Article Four) requires the trustee to turn over the stated percentages of Trust B to Craig Bullis upon his 25th, 30th and 35th birthdays. However, this subsection is a part of the entire section and it clearly appears that the contingent dispositions are only called into play upon the death of Maurice Bullis. This fact, together with the language in section 4.1 of Article Four, which provides for an income from the trust for Maurice Bullis during his life, strongly indicates that the testator intended Trust B to remain in existence until Maurice Bullis' death or the 35th birthday of Craig Bullis, whichever was later. It is, of course axiomatic that where there is no ambiguity parol evidence may not be admitted to construe the will. (*Young v. Whisler* (1960), 19 Ill. 2d 501, 506.) We agree with the finding of the trial court that Article Four is essentially unambiguous and that no grounds exist for judicial construction at this time.

Plaintiff's attempt to find a latent ambiguity in Article Four is not persuasive. He argues that at the time of the execution of the will on May 5, 1962, the testator was terminally ill of cancer and was aware of the probable imminence of her death; therefore he reasons that she could not have reasonably contemplated the predecease of her husband nor his decease prior to the 25th birthday of Craig Bullis. A well-drafted will should always provide for contingencies which would follow likely as well as unlikely events. The court therefore properly dismissed count I.

We conclude, however, that it was error to dismiss count II, which was for an accounting. The trial court concluded that the trustee had no duty to account to Craig Bullis but noted that the trustee had agreed to an accounting "from the point at which the trustee received assets from the Probate Estate, from that point on." In this court the trustee has agreed that it will provide an accounting on its own terms beginning with the date of the receipt of distribution from the estate of Roselyn Ann Bullis.

The trustee, in our view, did have an obligation to account. Craig Bullis had a vested interest as to 50% of Trust B on the date this suit was commenced. Even though he could not have received either income or principal since his father was alive, he had reached the age of 30 and thus had a right to immediate possession of 50% of Trust B if the preceding estate had terminated. "Vesting" is defined in *Chicago Title & Trust Co. v. Shellaberger* (1948), 399 Ill. 320, 334:

> "A vested remainder is one which throughout its continuance gives to the remainderman or his heirs the right to immediate possession whenever and however the preceding estate may determine. (*Crowley v. Engelke*, 394 Ill. 264; *Murphy v. Westhoff*, 386 Ill. 136.) Immediate vesting is indicated when the postponement of enjoyment is merely because another estate precedes and where the postponement of enjoyment is for the convenience of the property and not because of reasons personal to the beneficiary. (*Martin v.*

*McCune,* 318 Ill. 585; *Armstrong v. Barber,* 239 Ill. 389.) The law, of course, favors the vesting of estates at the earliest possible moment. *Fay v. Fay,* 336 Ill. 299."

It follows that as to the remaining 50% of Trust B Craig Bullis had merely a contingent interest since if his father had died when the suit was filed he still could not have enjoyed that portion of the trust estate until he had reached the age of 35.

■■ Arguably, if Craig Bullis were merely a contingent remainderman as the trial court viewed him an accounting could have been withheld unless "waste, mismanagement or dissipation of assets appear or can be shown." (*Barnhart v. Barnhart* (1953), 415 Ill. 303, 323.) However, since it appears that Craig Bullis is a vested remainderman at least with respect to a portion of the trust principal and the income, he is entitled, and not merely by grace of the trustee, to an accounting. In general, Craig Bullis was entitled to such information as would be reasonably necessary to enable him to " 'enforce his rights under the trust or to prevent or redress a breach of trust.' " (*Wallace v. Malooly* (1954), 4 Ill. 2d 86, 95.) It was therefore error for the trial court to dismiss count II in its entirety.

■■■ We then address ourselves to the real dispute between the parties on this issue, how extensive an accounting is to be required. Preliminarily, we do not agree with the plaintiff's statement in his brief made without citation of authority that the beneficiary is entitled to an account from a trustee "from the date of the inception of the trust with the admission of the Will to Probate." It appears to be well settled that a trustee's duty to account begins when he has accepted the trust and qualified in the manner required by law; it then "becomes his duty to examine carefully the terms of the trust in order to ascertain exactly what property forms the subject-matter of the trust, who are the beneficiaries, and what are the trustee's duties with respect to the trust property and cestuis." (Bogert, The Law of Trusts & Trustees §583, at 218-19 (2d ed. 1960). See also *In re Will of Hartzell* (1963), 43 Ill. App. 2d 118, 135.) Here, Craig Bullis alleged in effect that the trustee on or about March 6, 1969, failed to take possession of the entire amount of money due the trust and particularly failed to insist on the delivery of $72,972.19 due it. The trial court took the view that the trustee could not be required to account for any delinquency in taking possession of the full amount of money due from the executor of Mrs. Bullis' will because the estate of the mother had been closed 10 years ago. It should be particularly noted that the executor was also the DuPage Trust Company. The fact that the trustee is a different department of the trust company does not change the fact that the executor and trustee are essentially the same person. The trustee is not insulated from any act of fraud or breach of duty by the executor which it has either consented to, acquiesced in or negligently performed as trustee.

(See *Waterman v. Alden* (1893), 144 Ill. 90, 105.) Apart from any dereliction of duty on the part of the executor, the trustee could possibly be negligent in failing to either urge the executor to close the estate and transfer the trust property before an unreasonable period of time had gone by or in failing to require the executor to account for the entire trust res. As noted in Bogert, Handbook of the Law of Trusts §97, at 356 (5th ed. 1973):

> "For failure to act promptly and with reasonable skill in securing possession of the trust property, the trustee may be held liable for any loss caused thereby. For example, if a testamentary trustee fails to demand the trust property from an executor for a long period, and during this time the executor embezzles the estate property, the trustee may be held liable for the value of the trust res."

In general, a trustee is under a duty to the beneficiary to take reasonable steps to enforce any claim which he holds as trustee against either predecessor trustees or executors of the estate "to compel them to transfer to him as trustee property which they are under a duty to transfer, or to redress any breach of duty committed by them." Restatement (Second) of Trusts §177, comment *a* (1959). See also *In re First National Bank* (1974), 37 Ohio St. 2d 60, 307 N.E.2d 23, 26, and *American Fidelity Co. v. Barnard* (1962), 104 N.H. 146, 181 A.2d 628, 632.

We therefore affirm that portion of the judgment which dismissed count I (for construction of the will) and reverse that portion of the order which dismissed count II (for an accounting), and remand the cause to the trial court with directions to vacate the order dismissing count II, require the trustee to file an answer and to thereupon proceed to a hearing not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded with directions.

GUILD, P. J., and WOODWARD, J., concur.