******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# SUSAN SHAPIRO BARASH, COTRUSTEE, ET AL.
## *v.* BARBARA LEMBO
### (SC 20676)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Ecker and Alexander, Js.

*Syllabus*

The plaintiffs, three siblings who were beneficiaries of an inter vivos trust established by their father, R, and S, who was one of three cotrustees of the trust, sought to recover damages from the defendant, another one of the cotrustees, for the defendant's alleged breach of her fiduciary duty. S is the ex-wife of R and the mother of the trust beneficiaries, whereas the defendant was married to R at the time of his death in 2007. In 2006, R executed a will leaving the residue of his estate to the trust. At the time of R's death, R owned a 49 percent interest in certain commercial real estate development projects, including properties owned by E Co., M Co., and N Co., which became a part of his estate upon his death. R's business partner, F, also held a 49 percent interest in each of the three companies, and, after R's death, F served as the sole manager of each of the companies pursuant to their respective operating agreements. L had served as the sole executor of the estate since 2009. In 2016, S was appointed as the third cotrustee of the trust, joining the defendant and L, the other two cotrustees. After S was appointed as a cotrustee, the plaintiffs raised various challenges in the Probate Court to L's management of the estate and to certain accountings, and sought to remove L as executor. Those challenges were predicated on allegations that L had breached his duty of loyalty on the grounds that he engaged in self-dealing and had a conflict of interest stemming from his personal and professional relationship with F. The Probate Court, however, rejected the plaintiffs' claims and issued various decrees denying the petition to remove L as executor and approving in part the challenged accountings. The plaintiffs and L filed separate appeals from the Probate Court's decrees, which were consolidated and scheduled for a trial de novo in the Superior Court. Meanwhile, in their complaint against the defendant in the present case, the plaintiffs alleged that she had breached her fiduciary duty as trustee by failing to protect and collect trust property, to investigate or ask questions about L's alleged mismanagement of the estate, and to seek recovery from and hold L accountable for any damages sustained by the trust as a result of his misconduct. The plaintiffs relied on three sets of factual circumstances relating to L's administration of the estate and F's management of the three companies. Specifically, the plaintiffs referred to a 2011 amendment to the operating agreement of E Co., which provided F with an annual salary for his services as manager retroactive to 2007, a $3 million loan to E Co. from the proceeds of the sale of assets owned by M Co. and N Co., and the sale of real property owned by E Co. The plaintiffs alleged that these transactions were detrimental to the interests of the trust and that L had ongoing conflicts of interest stemming both from his personal relationship with F and the legal representation provided to F by the law firms with which L was associated while administering the estate. The parties filed separate motions for summary judgment. The plaintiffs adduced certain evidence, in support of their summary judgment motion, that L's actions had benefited F to the detriment of the trust beneficiaries and relied on the defendant's own deposition testimony that she, among other things, had failed to attend any of the Probate Court hearings pertaining to the estate, did not inquire about the assets that the trust should have been receiving from the estate, maintained no records of distributions made to the trust or to the trust beneficiaries, and took no steps to determine whether L had properly performed his duties as executor. The trial court, however, granted the defendant's motion for summary judgment and rendered judgment for the defendant, agreeing with her arguments that her duties as a trustee with respect to the residuary assets of R's estate had not commenced because those assets had not yet been conveyed to the trust, and that

she owed no fiduciary duty to the trust beneficiaries until the estate settled. On the plaintiffs' appeal from the trial court's judgment, *held*:

1. The Probate Court's denial of the plaintiffs' petition to remove L as executor of R's estate on the grounds of self-dealing and conflict of interest did not collaterally estop the plaintiffs from litigating in the present case the issue of whether the defendant had breached her fiduciary duty to investigate, object to, or otherwise hold L accountable for his mismanagement of the estate:

   Probate Court orders, judgments, and decrees are final judgments for purposes of collateral estoppel and res judicata, the general rule in Connecticut is that a pending appeal does not deprive a Probate Court order, judgment, or decree of finality for purposes of the preclusion doctrines, and, thus, the Superior Court in the present case ordinarily would be required to apply the principles of collateral estoppel and res judicata to the Probate Court's decrees, even when there is a pending appeal from those decrees.

   In the present case, however, the consolidated appeal from the Probate Court's decrees was to take the form of a trial de novo in the Superior Court pursuant to statute (§ 45a-186), and, although this court had not previously considered whether a trial de novo in a pending appeal renders the preclusion doctrines inapplicable, it adopted the rule applied by the federal courts and endorsed by the Restatement (Second) of Judgments, pursuant to which the pendency of an appeal ordinarily does not suspend the preclusive effect of an otherwise final judgment, unless the appeal is to be conducted as a trial de novo.

   Application of the federal rule in the context of prior litigation resulting in a probate decree that is the subject of a pending de novo appeal struck the appropriate balance because, when an appeal is conducted as a trial de novo, the appellant is entitled to relitigate the issues that were addressed by the Probate Court without regard to the Probate Court's factual findings or legal conclusions, and the Superior Court, sitting as a Probate Court, may admit or preclude evidence, make factual findings and credibility determinations, and arrive at an ultimate conclusion without according any preclusive effect to the Probate Court's prior findings or rulings.

   Accordingly, a probate decree that is the subject of a pending de novo appeal does not contain the necessary attributes of finality to warrant application of the doctrine of collateral estoppel.

   Nonetheless, this court emphasized that trial courts possess significant and effective means to manage their dockets to minimize the risk of inconsistent outcomes or other undesirable consequences of potentially duplicative litigation, and it suggested that, on remand, the trial court may wish to consider deferring trial pending the outcome of the trial de novo in the appeal from the decree denying the petition to remove L as executor, which might ultimately have preclusive effect in the present case.

2. The trial court incorrectly concluded that there was no genuine issue of material fact as to whether the defendant had breached her fiduciary duty to collect and protect trust assets on the ground that she did not owe the trust beneficiaries such a duty with respect to the residuary assets that were not yet part of the trust res, and, accordingly, this court reversed the trial court's judgment and remanded the case for further proceedings:

   Beginning when the trustee accepts the trusteeship, the trustee owes a fiduciary duty to administer the trust in the interest of the beneficiaries, the duty to administer the trust includes a duty to collect and protect trust property, as well as the associated responsibility of taking reasonable steps to uncover and redress any breach of duty committed by a predecessor fiduciary, and, when trust property is held or controlled by another, the duty to collect and protect trust property may require the trustee to take reasonable steps to enforce claims held by the trust.

   Moreover, the trustee of a testamentary trust has a duty to compel the executor of an estate to transfer trust property that the executor has a duty to transfer, or to redress any breach of duty committed by the executor, these principles apply with equal force when a will contains

a testamentary disposition for the purpose of adding property to an inter vivos trust, such as in the present case, and, when an inter vivos trust is the beneficiary of a will, the trustee has a duty to pursue reasonable claims on behalf of the trust against the executor.

In the present case, R's trust, which was amended and restated on the same day that R executed his will, operated in association with R's will, insofar as R's will expressly granted to L the authority to retain the estate assets and significant discretion in controlling their operation and management, the trust, as the residuary beneficiary, was entitled to whatever remained of the assets under L's control upon the closing of the estate, and the defendant had a duty, as trustee, to take reasonable steps to safeguard and protect the trust's interest in those assets.

Furthermore, it was of no consequence that the defendant lacked legal title or any power to take action with respect to the residuary assets that were in L's control because, when an executor, such as L, controls the estate assets while the estate remains open, a trustee has a duty to take reasonable steps to protect and collect the trust's interests in the residuary assets, after appropriate inquiry and investigation, and to pursue a claim against the executor if required by the standard of care applicable to trustees.

In addition, this court's review of the record revealed that genuine issues of material fact existed with respect to the allegations that the defendant had breached her fiduciary duty to protect and collect the residuary assets in R's estate.

Specifically, the allegations in the plaintiffs' motion for summary judgment, and the evidence that the plaintiffs adduced, established that R's estate had been in probate for nearly seventeen years, raised disputed questions of fact concerning both L's involvement in the loan to E Co. and the amendment to E Co.'s operating agreement authorizing a retroactive salary for F, and demonstrated that L had significant personal and professional ties to F and that the law firms with which L was associated received substantial income from their representation of entities in which F had an interest.

Likewise, a reasonable fact finder could reach different conclusions about whether L had made prudent business decisions in managing the estate, consistent with his fiduciary duty as executor, or had made decisions that benefitted L and F to the detriment of the estate and the trust.

The plaintiffs also submitted sufficient evidence to establish that material questions of fact remained as to whether the defendant knew or should have known of L's alleged breach of trust, including the deposition transcripts of the defendant, in which she admitted that she, among other things, had failed to discuss at any point with her cotrustees what her duties as trustee included, had failed to attend any Probate Court proceedings, had not inquired about what assets the trust should be receiving from the estate, and had signed the amendment to the operating agreement of E Co. without inquiring about whether the amendment was in the best interest of the trust.

3. The trial court's judgment in favor of the defendant could not be affirmed on the alternative ground that the plaintiffs' complaint had failed, as a matter of law, to state a claim for breach of fiduciary duty:

The defendant's alternative ground for affirmance was premised on her claim that an allegation of self-dealing is a necessary element of a claim for breach of a trustee's fiduciary duty of prudence and that the plaintiffs did not allege or submit evidence to establish that she had engaged in self-dealing, but this court disagreed that a claim for breach of a trustee's fiduciary duty must include an allegation that the trustee engaged in self-dealing.

Specifically, this court clarified that, to state a claim of breach of fiduciary duty against a trustee, a plaintiff must allege the existence of a fiduciary relationship, giving rise to a duty, breach of that duty, causation, and damages, and it overruled an Appellate Court case on which the defendant relied, *Rendahl* v. *Peluso* (173 Conn. App. 66), to the extent that that case required an allegation of self-dealing as an element of a claim of breach of fiduciary duty against a trustee.

In the present case, the plaintiffs' complaint sufficiently alleged a claim of breach of fiduciary duty against the defendant, as trustee, insofar as the complaint alleged that the defendant owed the plaintiffs a duty of undivided loyalty and a duty to administer the trust prudently and with due diligence, that the defendant breached those duties by failing to protect and collect trust property, to investigate or ask questions about L's alleged misconduct, and to seek to hold L accountable for that misconduct, and that, as a result of the defendant's various alleged breaches of fiduciary duty, the plaintiffs incurred damages.

Argued February 15—officially released November 7, 2023

*Procedural History*

Action to recover damages for breach of fiduciary duty, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Moukawsher, J.*, granted the defendant's motion for summary judgment, denied the plaintiffs' motion for summary judgment, and rendered judgment thereon, from which the plaintiffs appealed. *Reversed*; *further proceedings.*

*Barbara M. Schellenberg*, with whom were *Owen T. Weaver* and, on the brief, *David B. Zabel*, for the appellants (plaintiffs).

*Laura Pascale Zaino*, with whom was *Joseph V. Meaney, Jr.*, for the appellee (defendant).

*Opinion*

ECKER, J. The primary issue in this appeal is whether the trustee of an inter vivos trust that is the residuary beneficiary of the estate of the settlor-decedent has a duty to protect and collect assets that have not yet been transferred to the trust. After providing for the payment of debts and taxes and setting forth a number of specific bequests, the will of the decedent, Richard Ripps, who died in 2006, bequeathed the residue of his estate to an amended and restated revocable trust benefiting his three children, the plaintiffs Jennie R. Ripps, Michael J. Ripps, and Elizabeth J. Ripps (trust beneficiaries). The present action and five other consolidated cases[1] concern the proper administration of that portion of the decedent's residuary estate that has not yet been distributed to the trust. In particular, the undistributed assets consist of a 49 percent interest in certain commercial real estate development projects (residuary assets), including properties owned by Evergreen Walk, LLC (Evergreen Walk), Northern Hills, LLC (Northern Hills), and M/S Town Line Associates, LLC (M/S Town Line Associates) (collectively, commercial assets).[2]

Approximately seventeen years later, the estate has not yet settled. In 2018, the trust beneficiaries and their mother, the plaintiff Susan Shapiro Barash, one of three cotrustees of the Richard Ripps Amended and Restated Revocable Trust Dated February 8, 2008, filed this action in the Superior Court, alleging that the defendant and cotrustee, Barbara Lembo, breached her fiduciary duty as trustee by failing to protect and collect trust property, to investigate or ask questions regarding the alleged misconduct of the executor of the estate, Laurence P. Rubinow,[3] and to seek recovery from and hold Rubinow accountable for any damages sustained by the trust as a result of the alleged misconduct. The plaintiffs sought damages and the removal of the defendant as cotrustee. The trial court rendered judgment in favor of the defendant, who was the decedent's widow, on the basis of its conclusion that the defendant, as a trustee, had no duty, prior to the distribution of the residuary assets, to take any action against Rubinow with respect to those assets—including investigating, questioning or monitoring Rubinow's administration of the estate, or, as the trial court stated, to "[s]hap[e]" or "gather" the property that has not yet poured over into the trust.

We agree with the plaintiffs that the trial court incorrectly concluded that, as a matter of law, no material issue of fact remained as to whether the defendant owed the trust beneficiaries a duty to collect and protect the prospective trust property in the residuary estate. We also conclude that the complaint sufficiently alleges a cause of action against the defendant for breach of her fiduciary duty as trustee. Accordingly, we reverse the judgment of the trial court.

The record reflects the following facts relevant to this appeal. Almost one year before his death, in February, 2006, the decedent executed his will, which left the residue of his estate to the amended and restated revocable trust benefiting his three children as trust beneficiaries. The will and the trust were executed on the same day. During his lifetime, the decedent served as the sole trustee. After his death, Rubinow, the defendant, and Edwin Silverstone began serving as successor cotrustees. The decedent's will named Rubinow and Silverstone as coexecutors. Silverstone resigned as coexecutor and cotrustee in 2009, and Barash was appointed as the third cotrustee in 2016. Since 2009, Rubinow has served as the sole executor of the estate. It is undisputed that the trust beneficiaries have received $976,600 in distributions from the trust.

Upon the decedent's death, the initial total gross value of the estate was $12,897,768. Included in that estate was his 49 percent interest in the commercial assets. The decedent's business partner, John Finguerra, retained a 49 percent interest in each of the commercial assets and, following the decedent's death, served as the sole manager of each of those entities pursuant to their respective operating agreements.[4]

In their complaint, the plaintiffs relied on three sets of factual circumstances relating to Finguerra's management of the commercial assets and Rubinow's administration of the estate to support their allegation that the defendant had breached her fiduciary duty to investigate, to ask questions, to seek recovery of damages from Rubinow, or otherwise to hold him accountable for his management of the estate. First, in 2011, Evergreen Walk's operating agreement was amended to provide Finguerra with an annual salary of $175,000 for his services as manager, retroactive to January, 2007—contrary and detrimental, the plaintiffs claim, to the interests of the trust. The plaintiffs allege that the defendant signed the amendment upon the request of Rubinow and Finguerra without first reviewing the operating agreements of the commercial assets or otherwise making an independent determination whether it would be in the best interest of the trust to do so. Second, the plaintiffs complain about a loan of $3 million to Evergreen Walk from the proceeds of the sale of assets owned by M/S Town Line Associates and Northern Hills. The plaintiffs contend that Rubinow instead was obligated to convey those proceeds to the trust. Lastly, the plaintiffs support their claims of wrongdoing by reference to the 2014 sale of a real estate parcel owned by Evergreen Walk. The plaintiffs allege that, despite Rubinow's initial representations that the estate would receive more than $2 million as a result of the sale, which would then be distributed to the trust, the estate received only $490,000 following the sale.

In addition to these three particular transactions, the

plaintiffs allege that Rubinow had ongoing conflicts of interest—stemming both from his personal friendship with Finguerra and the legal representation provided to Finguerra by the law firms with which Rubinow has been associated during the administration of the estate—that triggered the defendant's duty on behalf of the trust to investigate, object or seek to recover from Rubinow any resulting damages.

The parties filed separate motions for summary judgment. In support of their motion, the plaintiffs produced evidence of Rubinow's accountings, demonstrating that, although the trust beneficiaries have received a total of $976,600 in distributions, Rubinow and his present and former law firms have received more than $1.8 million in fees. Additionally, to establish that Rubinow took actions that benefitted Finguerra, to the detriment of the trust beneficiaries, the plaintiffs adduced evidence that Rubinow had assisted in facilitating the approval of a 2011 amendment of Evergreen Walk's operating agreement, which authorized the payment of a salary to Finguerra for his services as manager of Evergreen Walk, retroactive to January, 2007, allegedly depriving the trust of additional funds. The plaintiffs argued that the retroactive amendment violated § 5.5 of the original 2006 operating agreement of Evergreen Walk, which provided in relevant part: "No [m]anager shall receive any compensation for his services as a [m]anager of the [c]ompany." They also claimed wrongdoing in connection with the $3 million loan to Evergreen Walk from the proceeds of the sales of the properties owned by Northern Hills and M/S Town Line Associates. They produced communications in support of their claim that Rubinow advised Finguerra to make the loan so that Evergreen Walk could repay bank loans that had been personally guaranteed by Finguerra, thereby serving Finguerra's financial interests rather than directing the sale proceeds to the estate for distribution to the trust.

The plaintiffs also submitted the deposition testimony of the defendant in support of their allegations that she had breached her fiduciary duty, relying on the defendant's admissions that she, among other things, failed to attend any of the Probate Court hearings pertaining to the estate, never inquired regarding the assets that the trust should be receiving from the estate, kept no records of distributions made to the trust or to the trust beneficiaries, never made any inquiries regarding Northern Hills or M/S Town Line Associates, signed the amendment to the Evergreen Walk operating agreement authorizing compensation for Finguerra, did not discuss the amendment with the trust beneficiaries, and never took steps to determine whether Rubinow had properly performed his duties as executor of the estate.

In arguing for summary judgment in her favor, the defendant primarily relied on the fact that none of the

three commercial assets in the decedent's estate had been conveyed to the trust. Because the three commercial assets are not part of the trust res, the defendant argued, and because the trust is currently unfunded, her duties as a trustee will not arise until the estate settles and its residue is conveyed to the trust.[5]

The trial court granted the defendant's motion for summary judgment, concluding that the defendant's duties as a trustee with respect to the residuary assets in the estate had not yet commenced.[6] The court relied on the decision of the Appellate Court in *Warner* v. *Merchants Bank & Trust Co.*, 2 Conn. App. 729, 732, 483 A.2d 1107 (1984), for the proposition that, when "money flows from an estate into a trust . . . '[t]he duties of a trustee are placed [on her] *after* the settlement of the estate is completed.' " (Emphasis in original.) The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

I

We first consider the preclusive effect, if any, of the May 10, 2018 decree of the Probate Court denying the plaintiffs' petition to remove Rubinow as executor of the estate on the basis of allegations of self-dealing and conflict of interest. Following oral argument, this court sua sponte directed the parties to submit supplemental briefs addressing the following question: "Does the decree of the Probate Court dated May 10, 2018, which denied the petition filed by . . . [the plaintiffs] to remove . . . Rubinow as executor of the estate, collaterally estop the plaintiffs in this action from litigating whether the defendant . . . [had] breached her fiduciary obligations to 'investigate, object to, or seek to prevent [Rubinow's] conflicts of interest and misconduct' in administering the estate? See [General Statutes] § 45a-24."

The following additional facts are relevant to our resolution of this issue. Following her appointment as the third cotrustee in 2016, Barash raised various challenges in the Probate Court to Rubinow's management of the estate, petitioning to remove him as executor and challenging both the fourth interim and final accountings. All three challenges were predicated on the plaintiffs' claim that Rubinow, in his capacity as executor, had breached his fiduciary duty of undivided loyalty to the estate. The plaintiffs relied on many of the same allegations that they raise in the present action, alleging that Rubinow had conflicts of interest stemming from his personal and professional relationship with Finguerra. The plaintiffs argued that those alleged conflicts of interest led Rubinow to act in the interest of Finguerra, Rubinow's law firms, and Rubinow himself, to the detriment of the trust.

The Probate Court rejected the plaintiffs' claims that Rubinow had breached his duty of loyalty to the estate and, by extension, the trust, which at that time was the only remaining beneficiary of the estate. The court found no conflict of interest requiring Rubinow's removal and no evidence that the estate or trust had been harmed by Rubinow's administration of the estate. To the contrary, the court found that "the estate ha[d] clearly benefited from [Rubinow's] experience, expertise, and service." The court specifically rejected the plaintiffs' claim that Rubinow had harmed the estate by failing to prevent the loan of $3 million to Evergreen Walk from the proceeds of the sale of assets owned by M/S Town Line Associates and Northern Hills. The court first observed that Finguerra, not Rubinow, controlled the liquidation of M/S Town Line Associates and Northern Hills, and the use of the sale proceeds. The court also found that, after the sales had been completed, "as a direct result of [Rubinow's] influence, approximately $1 million was distributed to the [trust] beneficiaries and $2 million to the estate for administrative expenses and taxes." The court made similar findings in its decrees partially approving the fourth interim and final accountings, stating that Rubinow's performance as executor had been "exemplary," that "[t]he value added [to the estate] by [Rubinow's] work [had] been substantial, and [that] the results achieved [had] been impressive."

The plaintiffs appealed from the decrees of the Probate Court denying the petition to remove Rubinow as executor and approving in part the fourth interim accounting and final accounting, and Rubinow appealed from the partial denial of attorney's fees incurred in connection with the final accounting. See footnote 1 of this opinion. All four consolidated appeals from the Probate Court are scheduled for a trial de novo. The question is whether, pending appeal of the decree denying the petition to remove Rubinow as executor, the Probate Court's rejection of the allegations against Rubinow for breach of fiduciary duty as executor operates in the present case to preclude the plaintiffs from relitigating essentially the same issues in derivative form, i.e., against the defendant rather than Rubinow directly.

There is no doubt that "Probate Court decrees are final judgments for purposes of collateral estoppel and res judicata." *Solon* v. *Slater*, 345 Conn. 794, 809, 287 A.3d 574 (2023); see, e.g., *Gaynor* v. *Payne*, 261 Conn. 585, 596, 804 A.2d 170 (2002) (res judicata); *Heussner* v. *Day, Berry & Howard, LLP*, 94 Conn. App. 569, 576, 893 A.2d 486 (collateral estoppel), cert. denied, 278 Conn. 912, 899 A.2d 38 (2006). Because a prior judgment in another case maintains its preclusive effect even pending appeal of that judgment,[7] the Superior Court in the present case ordinarily would be required to

apply the principles of collateral estoppel to the Probate Court's decrees and orders rejecting the claims of wrongdoing by Rubinow, notwithstanding the pending appeals from those orders. Prior decisions of both this court and the Appellate Court consistently have held that a pending appeal does not deprive a Probate Court order, judgment, or decree of finality for purposes of res judicata and collateral estoppel. To the contrary, we have observed that "the mere taking of an appeal from a probate decree does not in and of itself vacate or suspend the decree. . . . [T]he probate decree appealed from continues 'in full force' until the appellate tribunal otherwise determines. . . . But once the appellate tribunal, i.e., the Superior Court, otherwise determines and either modifies or sets aside the decree of the Probate Court, the probate decree is superseded." (Citations omitted.) *Kerin* v. *Stangle*, 209 Conn. 260, 265, 550 A.2d 1069 (1988); see also *Kochuk* v. *Labaha*, 126 Conn. 324, 329, 10 A.2d 755 (1940); *Silverstein* v. *Laschever*, 113 Conn. App. 404, 414, 970 A.2d 123 (2009).

This is the general rule. But a complication arises in a case, like this one, in which the underlying proceedings resulting in the probate order, judgment, or decree were not held on the record, because the appeal in such a case takes the form of a trial de novo in the Superior Court.[8] See, e.g., *Kerin* v. *Stangle*, supra, 209 Conn. 264 ("[t]he function of the Superior Court in appeals from a Probate Court is to take jurisdiction of the order or decree appealed from and to try that issue de novo"). This court has not previously considered whether the requirement of a trial de novo in a pending appeal from an order, judgment, or decree of the Probate Court renders inapplicable the doctrines of res judicata and collateral estoppel.[9]

The rule applied in federal courts is that an appeal that is conducted as a trial de novo suspends the preclusive effect of the underlying judgment. See, e.g., *In re Parmalat Securities Litigation*, 493 F. Supp. 2d 723, 737 (S.D.N.Y. 2007) ("Courts long have held that the pendency of an appeal ordinarily does not suspend the preclusive effect of an otherwise final judgment. But there is an exception for situations in which the appeal actually involves a trial de novo." (Footnote omitted.)), aff'd sub nom. *Bondi* v. *Capital & Finance Asset Management S.A.*, 535 F.3d 87 (2d Cir. 2008); see also 18A C. Wright et al., Federal Practice and Procedure (2d Ed. 2002) § 4433, pp. 78–79 and n.11 (citing *Deposit Bank of Frankfort* v. *Board of Councilmen*, 191 U.S. 499, 24 S. Ct. 154, 48 L. Ed. 276 (1903), for rule that "a final judgment retains all of its res judicata consequences pending decision of the appeal, apart from the virtually nonexistent situation in which the 'appeal' actually involves a full trial de novo"). This is also the approach endorsed in the Restatement (Second) of Judgments. See 1 Restatement (Second), Judgments § 13, comment (f), p. 135 (1982) ("[t]he better view is that a judgment

otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo").

The limitation of the preclusion doctrines to final judgments is grounded in the "[commonsense] point that such conclusive [carry over] effect should not be accorded a judgment [that] is considered merely tentative in the very action in which it was rendered." Id., comment (a), p. 132. The finality requirement, like a number of other doctrinal limitations in this area, is intended to ensure that the preclusive effect of prior litigation is no broader than necessary to serve the fundamental purposes underlying res judicata and collateral estoppel—preventing or minimizing repetitive litigation, inconsistent judgments, and vexatious litigation. See, e.g., *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 58–60, 808 A.2d 1107 (2002). This line drawing exercise ultimately involves a judgment call based on a multitude of considerations that will determine, in the final analysis, whether the demands of efficiency, fairness and public policy weigh for or against issue or claim preclusion under the circumstances. See id., 58–59 (observing that "the [common-law] doctrine of collateral estoppel is neither statutorily nor constitutionally mandated" but, "rather, is a judicially created rule of reason"). As Judge Henry J. Friendly observed, " '[f]inality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Lummus Co.* v. *Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961), cert. denied sub nom. *Dawson* v. *Lummus Co.*, 368 U.S. 986, 82 S. Ct. 601, 7 L. Ed. 2d 524 (1962).

The question we must resolve is where to draw the line for purposes of effectuating these doctrinal objectives in the context of prior litigation resulting in a probate decree that is the subject of a pending de novo appeal. We think that the rule articulated in the federal cases and commended in the commentary to the Restatement (Second) of Judgments—giving preclusive effect to judgments during the pendency of an appeal unless the appeal requires a trial de novo—strikes the appropriate balance.

Our reasons for adopting this approach are straightforward. It is well settled in Connecticut that the mere taking of an appeal generally is not sufficient to deprive a judgment of finality for purposes of the preclusion doctrines. "The fact that the judgment was appealed from makes no difference, because a party cannot litigate in a second action matters already concluded in a prior one. If the judgment appealed from is sustained, there is an end to the matter. If error is found and a new trial ordered, the party has his opportunity to retry the issues in the first action." *Salem Park, Inc.* v. *Salem*, 149 Conn. 141, 144, 176 A.2d 571 (1961). In contrast to

a typical appeal, however, when an appeal requires a trial de novo pursuant to General Statutes § 45a-186, the appellant is entitled to relitigate the issues that were addressed by the Probate Court without regard to the factual findings or legal conclusions there obtained. This means that "[a]n appeal from probate is not so much an 'appeal' as a trial de novo with the Superior Court sitting as a Probate Court and restricted by a Probate Court's jurisdictional limitations. . . . Although the Superior Court may not consider events transpiring after the Probate Court hearing; *Satti* v. *Rago*, 186 Conn. 360, 369, 441 A.2d 615 (1982); it may receive evidence that could have been offered in the Probate Court, whether or not it actually was offered." (Citations omitted.) *Gardner* v. *Balboni*, 218 Conn. 220, 225, 588 A.2d 634 (1991). In conducting a de novo trial in an appeal from a judgment, order, or decree of the Probate Court, the Superior Court possesses the same "discretionary power" as that exercised by the Probate Court, which the Superior Court must exercise in arriving at "an independent determination, without regard to the result reached by the [P]robate [C]ourt." *Prince* v. *Sheffield*, 158 Conn. 286, 298, 299, 259 A.2d 621 (1969). "[A]fter consideration of all evidence presented on the appeal [that] would have been admissible in the [P]robate [C]ourt, the [S]uperior [C]ourt should exercise the same power of judgment [that] the [P]robate [C]ourt possessed and *decide the appeal as an original proposition unfettered by, and ignoring, the result reached in the [P]robate [C]ourt.*" (Emphasis added.) Id., 298. Because the Superior Court, sitting as a Probate Court, will admit or preclude evidence, make factual findings, including credibility findings, and arrive at its ultimate conclusion without according any preclusive effect to the Probate Court's prior findings or rulings, we cannot say that the Probate Court decree contains the necessary attributes of finality to warrant application of collateral estoppel.[10]

Finally, we emphasize that, even without the absolute bar provided by the preclusion doctrines, trial courts possess significant and effective means to manage their dockets in order to minimize the risk of inconsistent outcomes or other undesirable consequences of potentially duplicative litigation in this context. In the present matter, for example, the trial court is managing six consolidated cases relating to various aspects of the same underlying dispute. On remand, the court may wish to consider deferring trial of the present case pending the outcome in the de novo appeal of the May 10, 2018 decree denying the petition to remove Rubinow. A judgment in that appeal may indeed have preclusive effect in the present case.[11] Trial management decisions of this nature are best left to the trial court, which is in the optimal position to assess the relevant considerations and to chart a course most conducive to fair and efficient adjudication. See 1 Restatement (Second), supra, § 13, comment (f), p. 135 ("The pendency of a motion

for [a] new trial or to set aside a judgment, or of an appeal from a judgment, is relevant in deciding whether the question of preclusion should be presently decided in the second action. It may be appropriate to postpone decision of that question until the proceedings addressed to the judgment are concluded."); see also General Statutes § 45a-186 (j) ("[a] motion for a stay may be made to the Probate Court or the Superior Court").

Consistent with the foregoing principles, we adopt the federal rule and conclude that the requirement of a trial de novo in the pending, consolidated appeals strips the Probate Court's May 10, 2018 decree of preclusive effect. A decree that carries no force on appeal should not be accorded outcome determinative, preclusive effect in different litigation while that appeal is pending.

II

The gravamen of the plaintiffs' claim in the present case is that the defendant breached a fiduciary duty owed to the trust beneficiaries to protect and collect assets that are not yet part of the trust res but that are to be distributed to the trust from the decedent's residuary estate when the estate settles. The trial court determined that, until the estate is settled, no such duty exists with respect to residuary assets that have not been distributed out of the estate.

The existence of a fiduciary duty presents a question of law subject to de novo review. See *Iacurci* v. *Sax*, 313 Conn. 786, 795–97, 99 A.3d 1145 (2014) (rejecting plaintiff's claim that existence of fiduciary duty presented question of fact).

It is a fundamental principle of trust law that a trustee is a fiduciary obligated to act in the best interest of the trust beneficiaries. See, e.g., General Statutes § 45a-199 ("[a]s used in sections 45a-186c, 45a-202 to 45a-208, inclusive, and 45a-242 to 45a-244, inclusive, unless other wise defined or unless otherwise required by the context, 'fiduciary' includes an executor, administrator, trustee, conservator or guardian"); *National Labor Relations Board* v. *Amax Coal Co.*, 453 U.S. 322, 330, 101 S. Ct. 2789, 69 L. Ed. 2d 672 (1981) (referring to trustees' "traditional fiduciary duties"); *Ramsdell* v. *Union Trust Co.*, 202 Conn. 57, 70, 519 A.2d 1185 (1987) (discussing trustees' fiduciary duties); 3 Restatement (Third), Trusts § 70 and comment (a), p. 6 (2007) (providing that trustee is subject to fiduciary duties set forth in Restatement (Third) of Trusts, including duties set forth in chapter 15 thereof, such as duties of prudence, loyalty, and impartiality).

A trustee owes a fiduciary duty to administer the trust in the interest of the beneficiaries, and that duty commences when the trustee accepts the trusteeship. See, e.g., *Phillips* v. *Moeller*, 148 Conn. 361, 372, 170

A.2d 897 (1961) (acknowledging "the [trustee's] duty . . . to administer the trust solely in the interest of the beneficiaries"); see also 3 Restatement (Third), supra, § 76, comment (a), p. 68 ("[o]nce having accepted the office . . . a trustee has a duty to administer the trust as long as he or she continues to serve as trustee"). The trustee's administration of the trust must comport with her duties of loyalty and prudence. See General Statutes § 45a-499bbb (a) ("[a] trustee shall administer trust assets solely in the interests of the beneficiaries consistent with the settlor's intent"); General Statutes § 45a-499ddd ("A trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill and caution.");[12] 3 Restatement (Third), supra, § 77, p. 81 ("(1) The trustee has a duty to administer the trust as a prudent person would, in light of the purposes, terms, and other circumstances of the trust. (2) The duty of prudence requires the exercise of reasonable care, skill, and caution."); 3 Restatement (Third), supra, § 78 (1), p. 93 ("[e]xcept as otherwise provided in the terms of the trust, a trustee has a duty to administer the trust solely in the interest of the beneficiaries").

As part of the duty to administer the trust, the trustee has a duty to "[collect] and [protect] trust property . . . ." 3 Restatement (Third), supra, § 76 (2) (b), p. 68; see, e.g., *Tatoian* v. *Tyler*, 194 Conn. App. 1, 37, 220 A.3d 802 (2019) ("One of the fundamental common-law duties of a trustee is to preserve and maintain trust assets. A trustee has the right and duty to safeguard, preserve, or protect the trust assets and the safety of the principal." (Internal quotation marks omitted.)), cert. denied, 334 Conn. 919, 222 A.3d 513 (2020); see also, e.g., *Terry* v. *Conlan*, 131 Cal. App. 4th 1445, 1461, 33 Cal. Rptr. 3d 603 (2005) (trustee's duties include collecting and protecting trust property).

When trust property is held or controlled by another, the duty to collect and to protect trust property may require a trustee to take "reasonable steps to enforce or realize on . . . claims held by the trust . . . ." 3 Restatement (Third), supra, § 76, comment (d), p. 71; see *Tatoian* v. *Tyler*, supra, 194 Conn. App. 37 ("A trustee must enforce and collect choses in action, claims, debts, and demands belonging to the estate. . . . [A] trustee must take reasonable steps to enforce claims of the trust and to defend claims against the trust." (Citation omitted; emphasis omitted; internal quotation marks omitted.)). "[T]he trustee ordinarily has the associated responsibility of taking reasonable steps to uncover and redress any breach of duty committed by a predecessor fiduciary." 3 Restatement (Third), supra, § 76, comment (d), pp. 70–71.[13]

The duty to collect or protect property in the hands

of the executor of an estate appears to arise most commonly in the context of testamentary trusts. Although this court has not had the opportunity to address the issue, a trustee of a testamentary trust has a duty to compel the executors of an estate to transfer trust property that they have a "duty to transfer, or to redress any breach of duty committed by them." (Internal quotation marks omitted.) *In re Estate of Erlien*, 190 Wis. 2d 400, 416, 527 N.W.2d 389 (1994); see 1 Restatement (Second), Trusts § 177, comment (a), p. 383 (1959) ("[t]he trustee is under a duty to the beneficiary to take reasonable steps to enforce any claim [that] he holds as trustee against predecessor trustees . . . *or in the case of a testamentary trust against the executors of the estate, to compel them to transfer to him as trustee property [that] they are under a duty to transfer, or to redress any breach of duty committed by them*" (citation omitted; emphasis added)); see also, e.g., *Bullis* v. *DuPage Trust Co.*, 72 Ill. App. 3d 927, 933, 391 N.E.2d 227 (1979) (trustee was under duty "to take reasonable steps" to enforce claims against executor, even when trustee and executor roles were filled by same trust company); *American Fidelity Co.* v. *Barnard*, 104 N.H. 146, 152–53, 181 A.2d 628 (1962) ("The trustee is under a duty to take such steps as are reasonable to secure control of the trust property and to keep control of it. Thus in the case of a testamentary trust [in which] one person is named as executor and another as trustee, it is the duty of the trustee to obtain possession of the trust property from the executor, and if he does not within a reasonable time take such steps as are reasonable to obtain possession of the property and the executor thereafter makes away with the property, the trustee is liable to the beneficiaries for the loss." (Internal quotation marks omitted.)).

The obligation of the testamentary trustee to take reasonable steps to obtain property improperly detained by an executor is merely a specific application of the more general principle that a trustee has a duty to protect the rights and interests of the beneficiaries of the trust. See, e.g., *In re Herrmann*, 127 App. Div. 2d 999, 1000, 512 N.Y.S.2d 942 (1987); see also 3 A. Scott et al., Scott and Ascher on Trusts (5th Ed. 2007) § 17.9, p. 1222 ("a trustee who fails to take reasonable steps to enforce a claim against the executor or a previous trustee, *to compel them to turn over property*, or to redress a breach of trust, is ordinarily liable for any resulting loss" (emphasis added)).

This principle applies with equal force when a will contains a testamentary disposition for the purpose of adding property to an inter vivos trust, such as in the present case. The precise manner in which the trust is created—by will or inter vivos—does not determine whether the trustee has a duty to protect and collect estate assets in which the trust holds a beneficial interest. When an inter vivos trust is a beneficiary of a will,

the trustee has a duty to pursue reasonable claims on behalf of the trust against the executor of the estate. See 3 A. Scott et al., supra, § 17.7, pp. 1212–15; id., § 17.9, pp. 1220–24.

The point is illustrated by *Pepper* v. *Zions First National Bank*, *N.A.*, 801 P.2d 144 (Utah 1990), in which the beneficiaries of an inter vivos trust that was the sole beneficiary of the estate claimed that the defendant bank, which served as both executor of the estate and trustee of the trust, had breached its fiduciary duty as executor by misrepresenting the value of the estate in quarterly reports. Id., 145–49. The beneficiaries argued that the bank, in its capacity as trustee, had a fiduciary duty to object to the closing of the estate and to enforce a claim against itself in its capacity as executor for any damages sustained as a result of the executor's alleged mismanagement of the estate. Id., 147, 151–52. In reversing the trial court's granting of summary judgment in favor of the bank, the Utah Supreme Court recognized: "The law is settled that a 'trustee owes a duty to the beneficiary on taking over property from the executor to examine the property tendered and see whether it is that which he ought to receive.' [G. Bogert & G. Bogert, The Law of Trusts and Trustees (2d Ed. Rev. 1980) § 583, pp. 358–59]. . . . A trustee has a duty to enforce claims against an executor as a prior fiduciary upon the transfer of the assets of the estate to the trustee. [Comment (a) to § 177 of the] Restatement (Second) of Trusts . . . [provides]: 'The trustee is under a duty to the beneficiary to take reasonable steps to enforce any claim [that] he holds as a trustee against predecessor trustees . . . or in the case of a testamentary trust against the executors of the estate, to compel them to transfer to him as trustee property [that] they are under a duty to transfer, or to redress any breach of duty committed by them.' " (Citation omitted.) *Pepper* v. *Zions First National Bank*, *N.A.*, supra, 151; see also *In re Kemske*, 305 N.W.2d 755, 762 (Minn. 1981) (noting with approval inter vivos trustee's concession that, "generally trustees do have a duty to the beneficiaries of the trust to pursue any actions [that] the trust rightly has against a prior trustee or executor for breach of his fiduciary duties" (internal quotation marks omitted)).

These legal principles apply to the trust at issue in the present case. The trust originally was created as an inter vivos trust and was amended and restated on the same day that the decedent's will was executed. The two instruments operate hand in glove. The trust is an integrated part of an overall estate plan that provides that assets in the residue of the estate will be added to the principal of the trust. Article IV (A) of the decedent's will expressly grants to Rubinow the power to retain the estate assets and significant discretion in controlling their operation and management. As the residuary beneficiary, upon the closing of the estate, the trust will be entitled to whatever remains of the assets currently

under Rubinow's control. As trustee, the defendant is duty bound to take reasonable steps to safeguard and protect the trust's interest in those assets.

The defendant argues that the trial court properly relied on *Warner* v. *Merchants Bank & Trust Co.*, supra, 2 Conn. App. 729, to conclude that she owed no fiduciary duty to the trust beneficiaries until there was ascertainable property in the trust, which the defendant takes to mean after the estate has settled. We find *Warner* inapposite. The court in *Warner* identified the central issue on appeal as whether the testamentary trust in that case had come into existence at all, and the court concluded that it had not. Id., 732. Its holding that the defendant trustee owed no duty to the trust beneficiaries rests on that premise. In the absence of an existing trust, the court concluded, the trustee had not accepted the trusteeship. Id., 734. Implicit in the court's reasoning was that, because the trust had not yet come into existence, and, therefore, there was no acceptance of the trust, the trustee's duties had not yet commenced. See id., 732–33. Unlike the trust at issue in *Warner*, the trust in the present case undisputedly exists and has held assets; indeed, the defendant herself, as a trustee, has made fourteen distributions to the beneficiaries totaling $976,600 over the years.[14]

The defendant also contends that she lacked any power—and, therefore, any duty—to take action with respect to the residuary assets because they were in Rubinow's control and had not been conveyed by him to the trust. This argument misses the point. Although the defendant's lack of legal title to the residuary assets obviously rendered her powerless to collect any income from those assets or to distribute that income to the trust beneficiaries, these circumstances do not relieve the trustee of her duty to take reasonable steps to protect and collect the trust's interests in the residuary assets, after appropriate inquiry and investigation, and then to pursue a claim or other relief against the executor if required by the standard of care applicable to her position as trustee. The fact that an executor controls the estate assets while the estate remains open is the very circumstance that triggers a trustee's duty to take reasonable steps to ensure that the executor exercises that control in a manner consistent with the interests of the trust and its beneficiaries. A trustee has powers coterminous with her duties in this respect.

As we previously explained, a trustee's fiduciary duty to administer the trust includes a duty of care, or prudence, which requires her to exercise reasonable care, skill, and caution in administering the trust. See *Phillips* v. *Moeller*, supra, 148 Conn. 369 ("[i]t is the duty of a trustee to exercise due diligence in view of the circumstances surrounding the administration of the trust . . . and [the trustee] must do what ordinary prudence requires in the circumstances" (citation omitted)); 3

Restatement (Third), supra, § 77 (1) and (2), p. 81 ("[t]he trustee has a duty to administer the trust as a prudent person would," which "requires the exercise of reasonable care, skill, and caution"); see also General Statutes § 45a-499ddd ("A trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill and caution."). A trustee's duty of prudence is not limited to collecting income and making distributions to trust beneficiaries from assets already held by the trust. The trustee also must exercise due diligence "to secure *possession* of all the assets of the trust estate." (Emphasis added.) *McClure* v. *Middletown Trust Co.*, 95 Conn. 148, 153, 110 A. 838 (1920); see id., 153–56 (when predecessor trustee misappropriated trust assets, successor trustee, who did not possess said assets, had duty "to exercise due care in the preservation of the trust assets," which included duty to undertake reasonable investigation).[15] Consistent with her duty to exercise due diligence to secure possession of trust assets, it necessarily follows that a trustee has the duty to take reasonable steps to determine whether the executor of an estate of which a trust is a beneficiary is discharging his duties to act in a manner consistent with the rights and interests of the trust and its beneficiaries in connection with assets in which the trust holds a beneficial interest. We emphasize that the duty to secure possession of trust assets is not "absolute" but is "limited to the exercise of due diligence in the light of the particular circumstances surrounding the administration of [the] trust."[16] Id., 153. A trustee must do "[w]hat ordinary prudence would do under these circumstances . . . and need do no more." Id.

Because the trial court incorrectly concluded that the defendant had no duty to protect and collect potential trust assets, such as the undistributed residuary assets at issue in this case, the court did not consider whether the plaintiffs adduced sufficient evidence to survive summary judgment on the issue of the defendant's alleged breach of her fiduciary duty. Our review of the record reveals that genuine issues of material fact exist with respect to the allegations of the defendant's breach of fiduciary duty in the present case.

The plaintiffs submitted sufficient evidence to demonstrate that issues of material fact remain as to whether the defendant had breached her duty to protect and collect the residuary assets in the decedent's estate. The factual assertions in the plaintiffs' motion for summary judgment, as supported by the attached exhibits, establish that the estate has been in probate for nearly seventeen years and raise disputed questions of fact concerning Rubinow's involvement in the $3 million loan from Northern Hills and M/S Town Line Associates to Evergreen Walk and in the amendment to Evergreen

Walk's operating agreement authorizing a salary, retroactively, for Finguerra. The plaintiffs' exhibits also demonstrate that Rubinow had significant personal and professional ties to Finguerra and that Rubinow's law firms received substantial income—allegedly more than $6.2 million—from their representation of entities in which Finguerra has an interest. As the trial court in the present case observed, "a reasonable fact finder could go either way" on the pivotal question of whether Rubinow made prudent business decisions in managing the estate, consistent with his fiduciary duty as executor, or made decisions that benefitted Finguerra and himself, to the detriment of the estate and the trust.

The plaintiffs also have submitted sufficient evidence to establish that material questions of fact remain as to whether the defendant knew or should have known of the alleged breach by Rubinow. See 1 Restatement (Second), Trusts, supra, § 223 (2), p. 519 ("[a] trustee is liable to the beneficiary for breach of trust, if [it] (a) knows or should know of a situation constituting a breach of trust committed by [its] predecessor and [it] improperly permits it to continue; or (b) neglects to take proper steps to compel the predecessor to deliver the trust property to [the trustee]; or (c) neglects to take proper steps to redress a breach of trust committed by the predecessor"); see also *In re Estate of Hunter*, 194 Misc. 2d 364, 368–69, 753 N.Y.S.2d 675 (Sur. 2002) (applying § 223 of Restatement (Second) of Trusts when predecessor fiduciary was executor), aff'd, 6 App. Div. 3d 117, 775 N.Y.S.2d 42 (2004), aff'd, 4 N.Y.3d 260, 827 N.E.2d 269 (2005). In support of their motion for summary judgment, the plaintiffs produced evidence, primarily from the deposition transcripts of the defendant, that she had failed to discuss at any point with her cotrustees what her duties as trustee included, failed to attend any Probate Court proceedings, made no inquiries regarding what assets the trust should be receiving from the estate, received a copy of a letter in 2008 informing her that the trust beneficiaries would not be receiving any further distributions until the resolution of a suit brought by a third party but failed to make any inquiries regarding the notice of no future distributions, made no inquiries regarding Northern Hills or M/S Town Line Associates, despite having received a payment of her 1 percent interest in the commercial assets as a result of the sales of those two assets, never reviewed the operating agreements of Northern Hills or M/S Town Line Associates, and signed the amendment to the operating agreement of Evergreen Walk without inquiring about whether the amendment was in the best interests of the trust.

In light of the evidence submitted by the plaintiffs in connection with the motions for summary judgment, we conclude that questions of material fact remain regarding whether the defendant had breached her duty to investigate, to make inquiries, to object to Rubinow's

management of the estate, or to enforce claims against Rubinow on behalf of the trust.[17]

## III

As an alternative ground for affirming the trial court's judgment, the defendant argues that the plaintiffs' claim of breach of fiduciary must fail as a matter of law because an allegation of self-dealing is a necessary element of any such claim, and the plaintiffs neither alleged nor submitted evidence to establish that the defendant had engaged in self-dealing. We do not agree that a claim for breach of a trustee's fiduciary duty is limited to instances in which the trustee engaged in self-dealing, and we therefore reject the defendant's invitation to affirm the judgment on this alternative ground.

Our review of the legal sufficiency of the plaintiffs' complaint presents a question of law. See, e.g., *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 130, 2 A.3d 859 (2010). "[T]he failure to include a necessary allegation in a complaint precludes a recovery by the plaintiff under that complaint . . . ." (Internal quotation marks omitted.) Id. Although an attack on the legal sufficiency of a claim is normally made via a motion to strike, the use of a motion for summary judgment for this purpose "is appropriate when the complaint fails to set forth a cause of action and the defendant can establish that the defect could not be cured by repleading." *Larobina* v. *McDonald*, 274 Conn. 394, 401, 876 A.2d 522 (2005).

"[A] plaintiff alleging a breach of fiduciary duty must show that any damages sustained were proximately caused by the fiduciary's breach of his or her fiduciary duty." *Bozelko* v. *Papastavros*, 323 Conn. 275, 283 n.10, 147 A.3d 1023 (2016). A breach of fiduciary duty is a broad concept encompassing a variety of different duties. Whether a fiduciary duty exists in any particular case, and the nature of that duty, is context dependent and "fact driven . . . ." *Iacurci* v. *Sax*, supra, 313 Conn. 796; see id. ("in many cases, the existence of a fiduciary duty may turn on the unique facts presented in the record") We are presently considering the elements of a claim as it applies to the duties of a trustee.

The fundamental underlying precept is that a "trustee stands in a fiduciary relationship with respect to the beneficiaries as to all matters within the scope of the trust relationship, that is, all matters involving the administration of the trust and its property." 3 Restatement (Third), supra, § 78, comment (a), p. 94. We have reviewed the manifold aspects of a trustee's fiduciary duties in part II of this opinion. Our decisions have recognized that trustees owe trust beneficiaries a fiduciary duty of loyalty,[18] a fiduciary duty of care, or prudence,[19] and a fiduciary duty of impartiality.[20] The present case involves the trustee's duty of prudence.

The defendant contends that an allegation that a trustee has breached her duty of prudence, without

more, does not state a legally sufficient claim for breach of fiduciary duty under Connecticut law. Relying on language in *Rendahl* v. *Peluso*, 173 Conn. App. 66, 162 A.3d 1 (2017), the defendant argues that a plaintiff must plead and prove, as an essential element of the tort, that the fiduciary engaged in self-dealing. Her argument focuses on a statement in *Rendahl* identifying the following four elements of a claim of breach of fiduciary duty: "[1] [t]hat a fiduciary relationship existed [that] gave rise to . . . a duty of loyalty . . . an obligation . . . to act in the best [interest] of the plaintiff, and . . . an obligation . . . to act in good faith in any matter relating to the plaintiff; [2] [t]*hat the defendant advanced his or her own interests to the detriment of the plaintiff*;[21] [3] [t]hat the plaintiff sustained damages; [and] [4] [t]hat the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty." (Emphasis altered; footnote added; internal quotation marks omitted.) Id., 100, quoting T. Merritt, 16 Connecticut Practice Series: Elements of an Action (2016–17 Ed.) § 8:1, p. 686.[22]

Regardless of whether *Rendahl* correctly identified the elements of a claim for breach of fiduciary duty in other contexts, such a requirement cannot be reconciled with the law of trusts.[23] As we discussed, the fiduciary duties of loyalty, prudence, and impartiality imposed on trustees extend well beyond a prohibition on self-dealing and are inconsistent with a judicially imposed limitation that would allow a claim of breach of fiduciary duty only in cases implicating self-dealing or the duty of loyalty. The duty of prudence, for example, imposes fiduciary duties pertaining to "matters relating to the administration of the trust . . . ." 3 Restatement (Third), supra, § 77, comment (a), p. 82; see *Phillips* v. *Moeller*, supra, 148 Conn. 369 (duty "to exercise due diligence" in administering trust); see also *Gadaire* v. *Orchin*, 197 F. Supp. 3d 5, 6–7, 11 (D.D.C. 2016) (when trustee failed to make premium payments on life insurance policy owned by trust, court concluded that, because beneficiaries' claim implicated duty of prudence, question was whether trustee's efforts were reasonable, and explained that "[i]t is inherent in the trust relationship . . . that the trustee must make at least some effort to remain apprised of the status of the trust's assets and to protect those assets"). The duty of prudence requires a trustee to exercise "reasonable care, skill, and caution." 3 Restatement (Third), supra, § 77 (2), p. 81; see, e.g., *In re Lavery's Will*, 79 N.Y.S.2d 27, 31–32 (Sur. 1948) (trustee's use of trust funds to pay tenant's repair costs implicated duty of prudence, and question was whether beneficiaries could show that trustee's actions were "without sufficient reason"), aff'd, 275 App. Div. 674, 87 N.Y.S.2d 221 (1949). The breach of this duty, or any other fiduciary duty imposed on the trustee, is actionable unless precluded by law or by legally valid prohibition.

Although our holding is limited to claims of breach of fiduciary duty against trustees, we find further support for our conclusion in the law of other states governing breach of fiduciary duties generally. The substantial majority of jurisdictions do not limit the cause of action to claims based on self-dealing or breach of the duty of loyalty. To the contrary, a cause of action for breach of fiduciary duty in a majority of jurisdictions requires the following elements: (1) the existence of a fiduciary relationship, giving rise to a duty, (2) breach of that duty, (3) causation, and (4) damages. See, e.g., *Mendoza* v. *Continental Sales Co.*, 140 Cal. App. 4th 1395, 1405, 45 Cal. Rptr. 3d 525 (2006) ("[t]he elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach"); *Aller* v. *Law Office of Carole C. Schriefer, P.C.*, 140 P.3d 23, 26 (Colo. App. 2005) ("To prove a claim for breach of fiduciary duty, it is the plaintiff's burden to demonstrate, inter alia, that he or she has incurred damages and that the defendant's breach of fiduciary duty was a cause of the damages sustained. . . . The element of causation is satisfied when the plaintiff proves that the defendant's conduct was a substantial contributing cause of the injury." (Citation omitted.)), cert. denied, Colorado Supreme Court, Docket No. 05SC653, 2006 WL 1530184 (June 5, 2006); *Kahn* v. *Britt*, 330 Ga. App. 377, 382, 765 S.E.2d 446 (2014) ("[e]stablishing a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach"); *Lawlor* v. *North American Corp. of Illinois*, 983 N.E.2d 414, 433 (Ill. 2012) ("[t]o state a claim for breach of fiduciary duty, it must be alleged and ultimately proved: (1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains"); *Dann* v. *Patten*, Docket No. 07-P-1031, 2008 WL 4899193, *1 (Mass. App. November 17, 2008) (decision without published opinion, 73 Mass. App. 1105, 896 N.E.2d 656) ("[the] essential elements of [a] breach of fiduciary duty claim are existence of fiduciary duty, breach, damage, and causation"); *Lundy* v. *Masson*, 260 S.W.3d 482, 501 (Tex. App. 2008) ("[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and [the] defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach"), review denied, Texas Supreme Court, Docket No. 08-0674 (October 24, 2008); see also *Kim* v. *Dongbu Tour & Travel, Inc.*, Docket No. 2:12-cv-1136 (WHW), 2012 WL 12903168, *2 (D.N.J. October 9, 2012) (citing *McKelvey* v. *Pierce*, 173 N.J. 26, 56–58, 800 A.2d 840 (2002), in concluding that, "[u]nder New Jersey law, the elements of a breach of fiduciary claim are: (1) the existence of

a fiduciary relationship between the parties; (2) the breach of the duty imposed by that relationship; and (3) damages or harm to the plaintiff caused by said breach"). But see *Wells* v. *Hurlburt Road Co., LLC*, 145 App. Div. 3d 1486, 1487, 43 N.Y.S.3d 637 (2016) (elements of breach of fiduciary duty claim include "the existence of a fiduciary relationship, misconduct by [the] defendant, and damages directly caused by that misconduct").

We hold that, in order to allege a claim against a trustee for breach of fiduciary duty, a plaintiff must allege (1) the existence of a fiduciary relationship, giving rise to a duty, (2) breach of that duty, (3) causation, and (4) damages. Under this standard, the plaintiffs' complaint sufficiently alleges a claim of breach of fiduciary duty against the defendant. The complaint alleges that the defendant owed the plaintiffs a duty of undivided loyalty and a duty to administer the trust prudently and with due diligence. The complaint further alleges that the defendant breached those duties by failing to protect and collect trust property, to investigate or ask questions about the executor's alleged misconduct, and to seek to hold the executor accountable for that misconduct. The complaint also claims that, as a result of the defendant's various alleged breaches of her fiduciary duty, the plaintiffs have suffered damages. These allegations state a legally sufficient claim for breach of a trustee's fiduciary duties under Connecticut law.

## IV

## CONCLUSION

For the foregoing reasons, we conclude that the May 10, 2018 probate decree is not entitled to preclusive effect, that genuine issues of material fact remain as to whether the defendant breached her fiduciary duty to collect and protect trust assets, and that self-dealing is not an essential element of the tort of breach of fiduciary duty. Because the trial court granted the defendant's motion for summary judgment on the basis of its conclusion that the defendant did not have a fiduciary duty with respect to the residuary assets, it has not yet considered her remaining claims in support of her motion for summary judgment. See footnote 5 of this opinion. Accordingly, we reverse the judgment of the trial court and remand the case to that court for consideration of the defendant's remaining claims in support of her motion for summary judgment, namely, that the defendant reasonably relied on the expertise and judgment of Rubinow and Finguerra, that her actions as alleged by the plaintiffs were not sufficiently egregious to constitute a breach of fiduciary duty under the terms of the trust, applicable statutes and case law, that some or all of the plaintiffs' claims were barred by the statute of limitations, and any other grounds that the trial court determines have been properly pre-

sented.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.

[1] The five cases consolidated with the present case include (1) *Barash* v. *Rubinow*, Superior Court, judicial district of Hartford, Docket No. HHD-CV-18-6101388-S (plaintiffs' appeal from August 31, 2018 Probate Court decree approving in part final accounting), (2) *Rubinow* v. *Barash*, Superior Court, judicial district of Hartford, Docket No. HHD-CV-18-6101376-S (appeal of executor, Laurence P. Rubinow, from August 31, 2018 Probate Court decree partially denying attorney's fees sought in connection with final accounting), (3) *Barash* v. *Rubinow*, Superior Court, judicial district of Hartford, Docket No. HHD-CV-18-6096422-S (plaintiffs' appeal from May 24, 2018 Probate Court decree approving in part fourth interim accounting), (4) *Barash* v. *Rubinow*, Superior Court, judicial district of Hartford, Docket No. HHD-CV-18-6096025-S (plaintiffs' appeal from May 10, 2018 Probate Court decree denying petition to remove Rubinow as executor), and (5) *Barash* v. *Rubinow*, Superior Court, judicial district of Hartford, Docket No. HHD-CV-19-6109896-S (plaintiffs' action against Rubinow, individually and as trustee, Finguerra, and law firm of McCarter & English, LLP, alleging breach of fiduciary duty as to Rubinow, aiding and abetting Rubinow in breaching his fiduciary duty as to Finguerra, and vicarious liability as to McCarter & English, LLP).

[2] In its May 10, 2018 decree, the Probate Court indicated that Northern Hills and M/S Town Line Associates have been liquidated. The plaintiffs allege that Northern Hills was dissolved in 2014.

[3] In addition to his role as executor of the estate, Rubinow is the third cotrustee of the trust. In *Barash* v. *Rubinow*, Superior Court, judicial district of Hartford, Docket No. HHD-CV-19-6109896-S, one of the plaintiffs' claims against Rubinow was that he breached his fiduciary duty in his capacity as cotrustee. As to that claim, the trial court granted Rubinow's motion for summary judgment on the same basis that it granted the defendant's motion for summary judgment in the present action. The plaintiffs have not appealed from that ruling.

[4] The defendant owned a 1 percent interest in the commercial assets. Finguerra's wife owned the remaining 1 percent interest.

[5] The defendant also argued that she had reasonably relied on the expertise and judgment of Rubinow and Finguerra, that her actions as alleged by the plaintiffs were not sufficiently egregious under the trust, applicable statutes, and case law to constitute a breach of fiduciary duty, and that some or all of the plaintiffs' claims were barred by the statute of limitations. Because the trial court concluded that the defendant owed no fiduciary duty to the trust beneficiaries until the estate settled, it did not reach her additional arguments in favor of summary judgment. As we explain in this opinion, we direct the trial court to consider these issues on remand.

[6] The trial court also rendered judgment in favor of Finguerra, and in favor of Rubinow in his capacity as cotrustee. As to the claims against Rubinow in his capacity as executor in the four appeals from the Probate Court, however, the court denied summary judgment as to both sides. Because the court denied summary judgment with respect to Rubinow in his capacity as executor, it also denied summary judgment with respect to the vicarious liability claims that the plaintiffs brought against Rubinow's law firm, McCarter & English, LLP. See footnote 1 of this opinion.

[7] This is the common-law rule in Connecticut. See, e.g., *Salem Park, Inc.* v. *Salem*, 149 Conn. 141, 144, 176 A.2d 571 (1961) (prior judgment retains preclusive effect during pendency of appeal); *Rogers* v. *Hendrick*, 85 Conn. 271, 276, 82 A. 590 (1912) ("[a] manifestly erroneous" judgment in prior action retained preclusive effect "until set aside by writ of error or appeal, or other proper proceedings").

[8] An appeal from a probate proceeding conducted on the record is treated differently. See General Statutes § 45a-186 (d) (appeal from decision of Probate Court "rendered in any case after a recording of the proceedings is made . . . shall be on the record and shall not be a trial de novo"); *Andrews* v. *Gorby*, 237 Conn. 12, 15–16, 675 A.2d 449 (1996) (explaining that, following passage of No. 82-472 of 1982 Public Acts, pursuant to § 45a-186, standard of review on appeal from judgments of Probate Court rendered after record of probate proceedings was made "shall *not* be a trial de novo," and concluding that, because no record was made of Probate Court proceed-

ings, trial de novo was required (emphasis in original; internal quotation marks omitted)); see also General Statutes § 45a-186b (setting forth standard for "an appeal taken under section 45a-186 from a matter heard on the record in the Probate Court," pursuant to which "[t]he Superior Court shall affirm the decision of the Probate Court unless the Superior Court finds that substantial rights of the person appealing have been prejudiced because the findings, inferences, conclusions or decisions are: (1) [i]n violation of the federal or state constitution or the general statutes, (2) in excess of the statutory authority of the Probate Court, (3) made on unlawful procedure, (4) affected by other error of law, (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion"); *Fumega* v. *Norwalk Probate Court*, Docket No. FST-CV-16-5015987, 2017 WL 5505721, *4–5 (Conn. Super. October 11, 2017) (describing and applying § 45a-186b standard in appeal from probate decree when proceedings were on record).

[9] General Statutes § 45a-24 provides in relevant part: "All orders, judgments and decrees of courts of probate, rendered after notice *and from which no appeal is taken*, shall be conclusive and shall be entitled to full faith, credit and validity and shall not be subject to collateral attack, except for fraud." (Emphasis added.) On its face, the emphasized language suggests that the ordinary preclusion rules are suspended if an appeal is taken from the Probate Court's order, judgment, or decree. The decisions of both this court and the Appellate Court cited in the text of this opinion, however, have consistently held that a pending appeal does not deprive a Probate Court order, judgment, or decree of finality for purposes of res judicata and collateral estoppel. See *Kerin* v. *Stangle*, supra, 209 Conn. 265; *Kochuk* v. *Labaha*, supra, 126 Conn. 329; *Silverstein* v. *Laschever*, supra, 113 Conn. App. 414. Because our precedent interpreting § 45a-24 does not speak to the narrow question of whether a pending appeal de novo deprives a Probate Court judgment of preclusive effect, we look elsewhere for guidance on that question.

[10] We note two mid-nineteenth century decisions of this court that, although not cited by either party to this appeal, warrant brief discussion. See *Bank of North America* v. *Wheeler*, 28 Conn. 433, 442 (1859); *Curtiss* v. *Beardsley*, 15 Conn. 518, 523 (1843). Neither *Wheeler* nor *Curtiss* involved an appeal from the Probate Court. *Curtiss* involved an appeal to the county court from a judgment rendered by a justice of the peace. See *Curtiss* v. *Beardsley*, supra, 522. The appeal at issue in *Wheeler* was taken to a New York appellate tribunal from a judgment of a New York court of common pleas. See *Bank of North America* v. *Wheeler*, supra, 434 (preliminary statement of facts and procedural history). Applying the formal categories used at the time, the court in *Curtiss* contrasted appeals that operated to bring the "whole cause" before the reviewing court "as if it had been originally commenced there," with appeals that involved "only the order, sentence, denial, decree or judgment of a court of probate in the settlement of an estate, that may be appealed from . . . ." (Citation omitted.) *Curtiss* v. *Beardsley*, supra, 523; see *Bank of North America* v. *Wheeler*, supra, 442. *Curtiss* held that the former type of appeal (one that brings up the "whole cause" for a trial de novo on appeal) operates automatically to vacate the judgment of the inferior court. *Curtiss* v. *Beardsley*, supra, 523–24. *Wheeler* establishes the converse proposition, holding that, "if [an] appeal is in the nature of a writ of error, and only carries up the case to the court of appeals as an appellate court for the correction of errors [that] may have intervened on the trial of the case below," then the appeal does not vacate the judgment from which the appeal is taken. *Bank of North America* v. *Wheeler*, supra, 442; see id. ("[t]he judgment below is only voidable, and stands good until set aside"). The logic behind the "voidable not void" principle relied on in both decisions is elusive at best as applied in this context, and we have previously signaled that we will not extend its practical effect any more than strictly necessary. See *Kerin* v. *Stangle*, supra, 209 Conn. 265–66 (noting possibility of inconsistent judgments arising from voidable not void approach and stating that "[w]e refuse to countenance such a result"). Neither *Curtiss* nor *Wheeler*, of its own force, compels the result advocated by the defendant in the present case, and we will not extend either holding in such a manner.

[11] This example is offered for illustrative purposes only. There may be better or additional ways to sequence and manage the consolidated cases to accomplish the goals of fairness and efficiency in light of all of the relevant circumstances.

[12] These statutory provisions were enacted in 2019 as part of the Connecti-

cut Uniform Trust Code (code), General Statutes § 45a-499a et seq. See Public Acts 2019, No. 19-137. The retroactive applicability of the code to any particular situation depends on the nature of the disputed issue. Relevant to the present appeal, General Statutes § 45a-487t (a) (1) provides in relevant part that the code applies to "all trusts created before, on or after January 1, 2020." Subsection (a) (5) of § 45a-487t, by contrast, bars retroactive application of the code to "[a]n act done before January 1, 2020 . . . ." The parties have not briefed any issue relating to the retroactive application of the code. The code did not change or redefine the fiduciary duties owed by the defendant to the trust beneficiaries but merely codified the common law in this respect. See *Benjamin* v. *Corasaniti*, 341 Conn. 463, 479 n.11, 267 A.3d 108 (2021). Consequently, we need not address whether the code applies retroactively to the defendant's actions.

[13] See also General Statutes § 45a-499iii ("[a] trustee shall take reasonable steps to enforce claims of the trust and to defend claims against the trust"); General Statutes § 45a-499jjj ("[a] trustee shall take reasonable steps to compel a former trustee *or other person* to deliver trust property to the trustee and to redress a breach of trust known to the trustee to have been committed by a former trustee" (emphasis added)).

[14] We disagree with the defendant's contention that *Warner* supports the proposition that a trustee's duties "shut off" when an interim distribution has depleted the trust of all assets and turn on again if and when additional assets are conveyed to the trust. (Internal quotation marks omitted.) *Warner* involved a testamentary trust that the Appellate Court held *never* came into existence. See *Warner* v. *Merchants Bank & Trust Co.*, supra, 2 Conn. App. 732. Nothing in that decision suggests that a trustee's duties in administering an *existing* trust "turn on" and "shut off" depending on whether the trust is currently funded. As we have explained, a trustee's duties to administer the trust commence upon acceptance of the trusteeship. See 3 Restatement (Third), supra, § 76, comment (a), p. 68 ("[o]nce having accepted the office . . . a trustee has a duty to administer the trust as long as he or she continues to serve as trustee").

[15] *First National Bank of Middletown* v. *Gregory*, 13 Ohio App. 3d 161, 163, 468 N.E.2d 739 (1983), relied on by the defendant for the proposition that she had no duty to act because she did not have legal title to the residual assets, is distinguishable. In *Gregory*, the defendant settlor, John M. Gregory, named the plaintiff bank (bank) as trustee of an inter vivos trust. Id., 162. Gregory executed a note secured by a mortgage with the bank and instructed the bank that payments on the note were to be made from the income generated by the trust. Id. The trust income came from payments on land contracts in connection with parcels of land that Gregory sold before creating the trust. Id. When some of the vendees began to fall behind in their payments on the land contracts, the trust no longer generated sufficient income to make payments on the note. Id. The bank notified Gregory of the arrearage and informed him that, until he assigned the land contracts to the bank, it lacked any power to enforce payment on the contracts. Id. When the bank filed for foreclosure on the note and the mortgage, Gregory counterclaimed that the bank had breached its fiduciary duty by failing to enforce and collect payment on the land contracts. Id., 162–63. In upholding the trial court's ruling that the bank had not breached its fiduciary duty, the Ohio Court of Appeals noted that, because the land contracts had not been assigned to the bank, it had no power to enforce the contracts or to collect the income. Id. By contrast, in the present case, the plaintiffs do not claim that the trustee had a duty to take action with respect to the residuary assets that required her to hold title to or to possess of those assets. Instead, they claim that the defendant had a duty to take action to investigate and otherwise to pursue a claim that Rubinow should have transferred those assets to the trust.

[16] Our holding rests on general principles of trust law pursuant to the common law and the General Statutes. We previously have recognized that the applicability of these legal principles can be impacted substantially by the particular provisions of a trust instrument. See *Hartford National Bank & Trust Co.* v. *Birge*, 159 Conn. 35, 42, 266 A.2d 373 (1970). Accordingly, at least within any limits that may be prescribed by law, "[i]n each case, it is the intention expressed by the particular language employed [that] must be construed." Id., 42–43. On remand to the trial court, the parties will have the opportunity to raise any arguments as to whether the language of the trust should be construed to alter or otherwise to depart from the background legal principles set forth in this opinion. With one exception, addressed in the following paragraph, we will not presently offer any views

on this issue, which is best considered in the first instance by the trial court now that the applicable legal framework has been established.

We do not agree with the defendant that the trust limits the defendant's liability to actions that constitute fraud or abuse of discretion or that were undertaken in bad faith. The trust provides in relevant part: "All individual (noninstitutional) [t]rustees shall be deemed to have: (a) acted within the scope of the authority granted herein; (b) exercised reasonable care, diligence and prudence; and (c) acted in good faith and impartially as to all persons interested in any trust created herein, *unless the contrary shall be proven by clear and convincing affirmative evidence.*" (Emphasis added.) This language, the validity or applicability of which is not disputed by the plaintiffs, requires the plaintiffs to rebut, by clear and convincing evidence, the presumption that the defendant acted reasonably, diligently, and in good faith. It imposes a heightened burden of proof on the plaintiffs. It does not, however, foreclose the plaintiffs from bringing a cause of action predicated on a breach of the defendant's fiduciary duty of prudence.

[17] Our conclusion that questions of material fact remain as to whether the defendant breached her duty to investigate, to make inquiries, to object to Rubinow's management of the estate, or to enforce claims against Rubinow on behalf of the trust does not, as the plaintiffs suggest, mean that the plaintiffs have prevailed against the defendant as to liability. We hold only that, on this record, the trial court should not have granted the defendant's motion for summary judgment. Any ultimate liability determination will depend on the resolution of disputed factual issues and the decision maker's application of the controlling legal principles to its factual findings.

[18] See, e.g., *Hall* v. *Schoenwetter*, 239 Conn. 553, 559, 686 A.2d 980 (1996); see also 3 Restatement (Third), supra, § 76 (1), p. 68 (trustee has duty to administer trust "in good faith"); id., § 78 (1), p. 93 (trustee's duty of loyalty requires trustee "to administer the trust solely in the interest of the beneficiaries").

[19] See, e.g., *Phillips* v. *Moeller*, supra, 148 Conn. 369; *Willis* v. *Hendry*, 127 Conn. 653, 661, 20 A.2d 375 (1940); see also 3 Restatement (Third), supra, § 76 (1), p. 68 (trustee has duty to administer trust "diligently"); 3 Restatement (Third), supra, § 77 (1) and (2), p. 81 (duty of prudence requires trustee "to administer the trust as a prudent person would, in light of the purposes, terms, and other circumstances of the trust," and to "exercise . . . reasonable care, skill, and caution").

[20] See, e.g., *Gimbel* v. *Bernard F. & Alva B. Gimbel Foundation, Inc.*, 166 Conn. 21, 34, 347 A.2d 81 (1974) (trustees are under duty to deal impartially with successor beneficiaries); see also 3 Restatement (Third), supra, § 79 (1), p. 127 (duty of impartiality requires trustee "to administer the trust in a manner that is impartial with respect to the various beneficiaries of the trust").

[21] Contrary to the defendant's suggestion, the duty of loyalty may be breached in the absence of any self-dealing by the trustee. See, e.g., *Phillips* v. *Moeller*, supra, 148 Conn. 369 (citing to 3 Bogert, The Law of Trusts and Trustees (1935) § 543, to show that duty of loyalty may be implicated when trustee considers interests of third persons or places herself in position giving rise to conflict of interest); *Lyman* v. *Stevens*, 123 Conn. 591, 597, 197 A. 313 (1938) (same); see also 3 Restatement (Third), supra, § 78 (2), pp. 93–94 (pursuant to duty of loyalty, "[e]xcept in discrete circumstances, the trustee is strictly prohibited from engaging in transactions that involve self-dealing *or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests*" (emphasis added)). The Restatement (Third) of Trusts expressly recognizes that the duty of loyalty may be implicated both by a trustee's "transactions, as trustee, with persons with whom the trustee is closely related or associated," and by "transactions by a trustee, acting in either a fiduciary or personal capacity, with third persons if the transaction would create a reasonably foreseeable risk of future conflict between the trustee's fiduciary duties and personal interests. Although not self-dealing . . . transactions of this type could expose trustees to the temptation of considering interests other than those of trust beneficiaries." (Citation omitted.) 3 Restatement (Third), supra, § 78, comment (e), p. 106.

[22] The putative requirement of self-dealing (or, more broadly, some other breach of the duty of loyalty) was not taken out of thin air by the Appellate Court. See *Sherwood* v. *Danbury Hospital*, 278 Conn. 163, 196–97, 896 A.2d 777 (2006) (even if it is assumed, arguendo, that defendant hospital owed plaintiff patient fiduciary duty, plaintiff's claim failed because she did not allege "fraud, self-dealing, conflict of interest or the like"); *Beverly Hills*

*Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 57, 717 A.2d 724 (1998) ("[p]rofessional negligence implicates a duty of care, [whereas] breach of a fiduciary duty implicates a duty of loyalty and honesty").

[23] *Rendahl* is overruled to the extent that it requires an allegation of self-dealing as an element of a claim of breach of fiduciary duty against a trustee. We need not resolve in this appeal whether *Rendahl* correctly states the required elements of a claim of breach of fiduciary duty with respect to fiduciaries other than trustees.

—————————————————